[Civ. No. 1474. Fifth Dist. Aug. 16, 1972.]

C. A. MAGISTRETTI CO., Plaintiff and Appellant, v.
MERCED IRRIGATION DISTRICT et al., Defendants and Respondents.

## COUNSEL

Stuhr & Martin and Charles Stuhr for Plaintiff and Appellant.

C. Ray Robinson, John E. Whiting, Bohnert, Flowers & McCarthy and Frederick W. Flowers for Defendants and Respondents.

## OPINION

**GARGANO, J.**—This litigation was precipitated by a public district's failure to obtain the statutory bond required by chapter 3 of division 5 of title 1, commencing with section 4200 of the Government Code;[1] the chapter was enacted by the Legislature for the protection of laborers and materialmen (*Powers Regulator Co.* v. *Seaboard Surety Co.,* 204 Cal.App.2d 338 [22 Cal.Rptr. 373]) and requires every prime contractor who is awarded a public work contract involving an expenditure in excess of $2,500 to furnish the public body awarding the contract with a labor and material bond; it also provides that no payment shall be made by the public body to the contractor for any claim arising out of his contract unless the statutory bond has been obtained. (Former Gov. Code, § 4208, now Civ. Code, § 3251.)

The basic facts are undisputed.

On April 5, 1966, the Merced Irrigation District, a public district formed pursuant to the Irrigation District Law (div. 11, commencing with § 20500 of the Wat. Code), entered into a contract with the Marquess Crane and Rigging Company for the removal of a bridge which spanned the waters of Lake McClure. The district agreed to pay Marquess $10,000 for floating and beaching the bridge, and an additional $20,000 for removing it from the premises; it was also agreed that if the contractor were unable to float the bridge, an additional sum of $6,000 would be paid by the district for its demolition.

On execution of the contract, Marquess, apparently in compliance with Water Code section 22308, furnished the district with a "faithful performance bond" in the amount of $35,000; the Hartford Accident and Indemnity Company was the surety. The district did not obtain the labor and material bond required by chapter 3 of division 5 of title 1 of the Government

---

[1]Now found in chapter 7, of title 15 of division 3, beginning with section 3247 of the Civil Code; the amount of the expenditure was raised to $10,000 by a 1971 amendment.

Code (now ch. 7 of tit. 15 of div. 3 of Civ. Code). Neither was it furnished with a list of subcontractors.

Sometime prior to July 7, 1966, Marquess entered into a subcontract with C. A. Magistretti Co., Inc. It engaged Magistretti to cut the bridge from its supports and to drop it onto the water where by means of pontoons the spans could be floated out of the lake; Marquess also agreed to pay Magistretti $6,050 for the services to be performed under the subcontract. The cutting work was performed by Magistretti between July 7, 1966, and October 9, 1966, but the pontoons ruptured and the bridge dropped to the floor of the lake where it now rests. Thereafter, Marquess became insolvent and its contract with the district was never completed.

On October 12, 1966, the district made an advance payment of $18,000 to Marquess on the main contract. The warrant for this payment was ordered by the district board of directors, without knowledge of the Magistretti subcontract and was remitted to the Hartford Accident and Indemnity Company to be administered by the surety.

On November 9, 1966, Magistretti filed a "claim of lien" pursuant to section 1192.1 of the Code of Civil Procedure. The claim stated, in substance, that Marquess had not paid Magistretti the sum of $6,050 due and owing under the completed subcontract and requested the district to withhold sufficient moneys from payments due to the prime contractor to satisfy the claim.

On February 17, 1967, Magistretti filed a complaint in the court below "for money due subcontractor for work, labor and materials"; it sought recovery against the surety bond the district had obtained from the Hartford Accident and Indemnity Company. Thereupon, Hartford moved for a summary judgment on the ground that the bond sued upon was a faithful performance bond, not a labor and material bond; the motion was granted.

On October 17, 1968, Magistretti filed a "Supplemental Complaint for Damages . . ." changing the theory of the case entirely. The supplemental complaint named the members of the district's board of directors as defendants and sought to recover damages proximately caused by their negligence in failing to obtain the required statutory labor and material bond.

After court trial, the court entered judgment in favor of the defendants. The court, inter alia, determined that Marquess did not furnish the district with a list of subcontractors or a labor and material bond, that the district had no knowledge of the Magistretti subcontract until after Magistretti filed its claim of lien and that Magistretti was guilty of contributory negli-

gence in failing to ascertain whether a labor and material bond had been posted. Magistretti has appealed from the adverse judgment.

To our knowledge, no California appellate court has decided the question as to whether a public entity or its responsible officer or employee is liable for damages proximately caused by the entity's failure to obtain the statutory bond required by chapter 3, division 5, title 1, of the Government Code (now ch. 7, tit. 15 of div. 3, Civ. Code). Nevertheless, that liability exists under such circumstances finds some support in decisions from our sister states; liability is imposed on the theory that the negligent omission is a breach of a statutory duty owed to members of a particular class, who because they have performed work or furnished materials for a public project have no lien against the property benefited. (17 Am.Jur.2d, Contractors' Bonds, § 51, pp. 228-230.) Also, in this state it is arguable that the public entity, at least, is liable by virtue of the express provisions of Government Code section 815.6. (44 State Bar J. p. 544.) This section provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

We do not reach the question as to whether the Merced Irrigation District is liable for the damages Magistretti allegedly incurred by the district's failure to obtain the statutory labor and material bond. Neither do we reach the question as to whether respondents are personally liable to Magistretti for their dereliction in office. Respondents are members of the district's governing board, and Magistretti failed to allege or prove that before filing the supplemental complaint it presented the district with a claim containing the information required by Government Code section 910, or, if so, that the claim was presented within the times prescribed by Government Code section 911.2.

As we stated in *Burgdorf* v. *Funder,* 246 Cal.App.2d 443, 447 [54 Cal.Rptr. 805]: "Section 950.2 applies to all public employees, including the defendant. The provision makes it clear that when such an employee is sued for an act or omission in the scope of his employment, said action is barred by the failure to present a claim to the employing public entity (in this case the state). This is true even where the public entity itself is immune from liability. Moreover, the language of this section which provides that the cause of action is barred, and the language of section 950.6 which provides that a cause of action may not be maintained until the claim has been rejected, also make it clear that the principle enunciated in

*Veriddo* v. *Renaud,* 35 Cal.2d 263 [217 P.2d 647], is still applicable, and thus a plaintiff must still allege in his complaint that he has complied with the claim statute in order to state a cause of action against a public employee."

■ Appellant does not deny that the Merced Irrigation District is a "public entity" within the ambit of division 3.6 of the Government Code. (See § 811.2.) Appellant also admits that it did not present the district with a claim pursuant to and containing the information required by that law. It argues that it filed a "claim of lien" pursuant to section 1192.1 of the Code of Civil Procedure and, hence, was not required to present the district with any other claim. In this connection, section 905 of the Government Code provides: "There shall be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of this part all claims for money or damages against local public entities except:

". . . . . . . . . . . . . . . . .

"(b) Claims in connection with which the filing of a notice of lien, statement of claim, or stop notice is required under any provision of law relating to mechanics', laborers' or materialmen's liens."

There is no merit to Magistretti's argument. While it is true that subdivision (b) of section 905 contains broad language, the exception articulated obviously pertains to a stop notice or to a notice of lien which lays the foundation for the lawsuit which is subsequently filed and which gives the public entity and its responsible officer or employee actual notice of the facts and theory upon which the lawsuit is predicated.[2] However, the "claim of lien" Magistretti filed on November 9, 1966, does not lay the foundation for the "supplemental complaint" appellant filed against respondents almost two years later. The cause of action alleged therein is based not on Code of Civil Procedure section 1192.1 or any of the succeeding sections, but, rather, it is directed against respondents personally, and if it exists at all it is because the cause of action is founded on Government Code section 815, a statutory liability incorporated in division 3.6, the very law Magistretti seeks to ignore.

---

[2]The presentation of the claim pursuant to division 3.6 of the Government Code is not a prerequisite to the filing of an action by a subcontractor who has performed services in connection with a public work even though the public entity is named as a defendant. Also, it is arguable that if the public entity makes a payment to a prime contractor after receiving a stop notice or notice of lien from a subcontractor, the public entity can be sued by the subcontractor for damages without the necessity of presenting another claim under division 3.6.

Nor can it be said that the "claim of lien" Magistretti filed with the district gave respondents notice of any impending action against them personally; it did not mention the district's failure to obtain the statutory bond and did not tell respondents that they were going to be charged with negligence in office in an attempt to hold them personally liable for the damages Magistretti sustained as a result of the alleged omission. On the contrary, it is reasonably apparent that at the time the claim was filed respondents and Magistretti were under the impression that a labor and material bond had been obtained. To interpret subdivision (b) of section 905 to dispense with the timely presentation of a claim containing the essential information required by Government Code section 910, in a case such as this, would make it possible for a person who has elected to seek relief from a public entity under one statutory theory, several years later, to sue an employee of the entity under an entirely different statutory theory even though the employee has had no notice of the potential liability. Of even greater consequence, the unconscionable delay could be accomplished in contradiction of ordinary rules of pleading because the so-called amendment to Magistretti's initial complaint not only brought in respondents as new parties to the action, but it changed the factual background, the nature of the cause of action and the basis for recovery. Were we to condone such a result, we would place an undue burden on public service, particularly as to public officers who receive no compensation, and we would subvert the very purpose of division 3.6 of the Government Code. As has been repeatedly stated, one of the main reasons for this law is to give the public entity and its officers and employees opportunity to investigate promptly any claim which is lodged against them, to negotiate a settlement if possible, or to prepare a defense.[3]

■ Magistretti's secondary argument that respondents are estopped from raising the company's failure to present the claim is equally without merit. The estoppel cases upon which appellant relies are all cases wherein the public entity, through its employees, agents or authorized representatives, was at least partly responsible for the plaintiff's failure to present a timely claim. There is no such evidence in this case. The initial complaint was filed February 17, 1967, more than three months after Magistretti presented the district with its "claim of lien," and during that period Magistretti had ample opportunity to discover that the district had not

---

[3]It is significant that in this case the action against respondents was filed at a time when it was no longer possible for respondents to take remedial steps against the prime contractor. Also, if appellant's position is carried to its logical conclusion, it would mean that a public officer could be sued several years after leaving public service despite the fact that he could not have anticipated a future personal liability when he severed his relationship with the public entity.

obtained the required statutory bond and to file the necessary claim. In addition, Magistretti was forewarned of the district's failure to obtain the bond by the answer the Hartford Accident and Indemnity Company filed in June 1967; yet it did nothing to protect its interests until some 16 months later when it filed its "supplemental complaint." Magistretti slept on its rights and not having pleaded or proved that respondents were responsible for the delay, is in no position to urge an "estoppel."

The judgment is affirmed.

Stone, P. J., concurred.