[Civ. No. 40869. Second Dist., Div. Four. Aug. 16, 1973.]

JO ANN RUGGIERO et al., Plaintiffs and Appellants, v.
LOS ANGELES CITY UNIFIED SCHOOL DISTRICT OF
LOS ANGELES COUNTY et al., Defendants and Respondents.

**COUNSEL**

Trygstad & Odell and Lawrence B. Trygstad for Plaintiffs and Appellants.

John D. Maharg, County Counsel, and Richard G. Brungard, Deputy County Counsel, for Defendants and Respondents.

**OPINION**

**DUNN, J.**—In a class action, petitioners sought the issuance of a writ of mandate to require respondents to compensate them in individually minor sums. Respondents' return to the petition denied most of its material allegations and pleaded various affirmative defenses including petitioners' fail-

ure to file a timely claim; respondents also pleaded six counterclaims.[1] The trial court's judgment denied issuance of the writ, its conclusions of law stating the petition for the writ is barred by the claims statute appearing in board of education rule 1206 and Government Code section 900 et seq. Petitioners appeal from the judgment.

The petition alleges that the named petitioners are employees of the Los Angeles City Unified School District and that they purport to represent "numerous certificated employees of the School District who were absent on September 18 and/or 19, 1969."[2] Respondents are the school district, the superintendent of the school district, the Los Angeles City Board of Education and its members in their official capacities. At the hearing on the petition, held October 20 and November 29, 1971, the court admitted into evidence the verified pleadings, various declarations, attached exhibits, letters offered by petitioners, and it also heard the testimony of petitioner Ruggiero.

The evidence reflects that petitioners and members of their class were absent from their duties without authorization on either or both September 18 and September 19, 1969. (This absence apparently was due to a teachers' strike against the district. We are not called upon to determine the legality of that strike.) For each day of unauthorized absence one day's pay, or 1/200th of their annual salaries, was subtracted. Petitioners contend that only 1/278th should have been deducted. That contention is the gravamen of this lawsuit.

Although both sides discuss the merits of the controversy, arguing the applicability of *McNickels* v. *Richmond Unified School Dist.* (1970) 11 Cal.App.3d 1209 [90 Cal.Rptr. 562], we are not here concerned with the merits since the trial court did not pass upon them. It based its judgment exclusively upon petitioners' failure to file a claim in compliance with board of education rule 1206[3] and Government Code sections. (*Myers* v. *County of Orange* (1970) 6 Cal.App.3d 626, 636-637 [86 Cal.Rptr. 198].)

---

[1]Respondents additionally filed a cross-petition for a writ of mandate, but it was placed "off calendar" when judgment was denied to petitioners.

[2]It was stipulated, at oral argument, that petitioners, and members of the class they purport to represent, are certificated school teachers, although the record does not specifically show them to be teachers.

[3]The trial court's conclusions of law read: "1. That the Petition for Writ of Mandamus is barred by the Claims Statute as found in Board Rule 1206 and the Government Codes 900, et sequel.
"2. That the Respondents are not estopped to assert the Claims Statute.
"3. That Board Rule 1206 was effective upon adoption.
"4. That October 16, 1970, was the last date that a claim could be filed pursuant to Board Rule 1206 and Government Code 911.2."

Inasmuch as conclusions of law are valid only if supported by the court's findings of fact (*Hunter* v. *Sparling* (1948) 87 Cal.App.2d 711, 721 [197 P.2d 807]; *Falk* v. *Falk* (1941) 48 Cal.App.2d 762, 769 [120 P.2d 714]; *Schoolcraft* v. *B. O. Kendall Co.* (1930) 108 Cal.App. 546, 549 [291 P. 659]) and findings of fact must be supported by evidence (*Clark* v. *Standard Acc. Ins. Co.* (1941) 43 Cal.App.2d 563, 567-568 [111 P.2d 353, 112 P.2d 298]), we look to both in our review.

The trial court found, in essence, that (1) a public meeting of the board's rules committee was held August 21, 1969, wherein it discussed approving rule 1206 for presentation to the board; (2) another public meeting was held September 8, 1969, before the board's committee-of-the-whole which further considered the rule; (3) on September 11, 1969, in a public meeting, the board of education adopted rule 1206; (4) a claim for salary was first presented to the board of education by counsel for U.T.L.A. (United Teachers — Los Angeles) on December 2, 1970; "(5) The Respondent School District made no false statements or concealments or conduct amounting thereto as relates to the passage of Board Rule 1206. No conduct on the part of the School District caused it to have an affirmative duty to specially inform the Petitioners or their attorneys of the passage of Board Rule 1206. ¶ (6) At no time did the Respondents represent to Mr. Trygstad or Mr. Odell [attorneys for petitioners and for U.T.L.A.] that the Administrative Guide would be kept constantly up to date. The Petitioners did not claim that any such representation was made nor that any such duty existed"; (7) historically, a substantial gap existed between the date a rule was adopted and the date supplements to the rules were printed; (8) a "Master Guide," containing all current rules, was available to the public; (9) petitioners' attorneys knew, or should have known, of the gap noted in finding 7; (10) rule 1206 is a procedural rule; (11) by historic practice of the school district, rules are effective upon enactment; (12) petitioners' attorneys first agreed to represent them on November 1, 1970; (13) the contracts between petitioners and respondents school district and board of education are from July 1 of each year through June 30 of the next year.

■ Our review of evidence received by the trial court discloses that substantial evidence supports each finding. Petitioners make no contrary contention but argue that the conclusions drawn from them by the trial court are legally faulty.

Petitioners' employment contracts with respondent board of education state in part: "This offer of employment is subject to all rules and regulations of the Board and all laws of the State of California in effect during

the period of employment." In 1963, the government claim statute (Gov. Code, § 900 et seq.) was enacted and became a part of the contracts. Pursuant to the authorization of section 935 therein, the board of education adopted its rule 1206 which reads: "Claims for Money or Damages. As a prerequisite to bringing suit against the Los Angeles Unified School District, any claims against the District for money . . . shall be presented and acted upon in accordance with Title 1, Division 3.6, Part 3, Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910), of the Government Code of California: . . . b. Claims for fees, salaries or wages . . . ." Under Government Code section 911.2, a claim for fees, salaries or wages must be presented "not later than one year after the accrual of the cause of action." Rule 1206 was adopted by the board of education, becoming effective on September 11, 1969.

Petitioners and members of the class they purport to represent were absent from their duties without authorization on Thursday-Friday, "September 18 and/or 19, 1969." Petitioners' salary payments, for the payroll period involved, would be due in October 1969 and the right to any prior items of unpaid salary thus would accrue in that month and year. Petitioners do not contest this, and agree the board had authority to adopt the rule. They argue, however: that the school year for 1969-1970 began July 1, 1969, and ended June 30, 1970; that the rule, although adopted, could not become part of their contracts until these contracts were renewed on July 1, 1970; their claims filed December 2, 1970, were timely under Government Code section 911.2; therefore, suit filed June 1, 1971, as was this suit, also was timely filed. It will be observed that petitioners' argument rests on the contention that rule 1206 did not become a part of their contracts upon enactment but only later, at the time when such contracts allegedly expired and were renewed.

Petitioners contend that terms and conditions of a contract cannot be changed while the contract is in force without the consent of both sides, arguing that part of their contracts, by implication, are the school district's rules and regulations then in effect. (*Heckley* v. *Board of Education* (1959) 53 Cal.2d 218, 220-221 [1 Cal.Rptr. 4, 347 P.2d 4]; *Frates* v. *Burnett* (1970) 9 Cal.App.3d 63, 69 [87 Cal.Rptr. 731]; *Board of Education* v. *Mathews* (1957) 149 Cal.App.2d 265, 269 [308 P.2d 449].) However, a part of petitioners' contracts was the provision that "This offer of employment is subject to all rules and regulations of the Board and all laws of the State of California in effect during the period of employment." Thus, the state's statutes, including Government Code section 935, also were a part of the contract, by its own terms as well as by law. (*Fry* v. *Board of Education* (1941) 17 Cal.2d 753, 760 [112 P.2d 229].) The sentence quoted

from the contract does not limit its application to those rules in effect at the beginning of the contract but, rather, "during the period of employment." As it must be conceded that rule 1206 came into effect during a school year, rather than at its beginning, the question is: was it lawfully given effect?

Government Code section 935[4] was enacted in 1963 and amended in 1965, before any school year here pertinent began. Rule 1206 was authorized by that code section, was adopted pursuant to its authority and was intended by the board of education to become effective immediately upon its adoption, namely, on September 11, 1969. We believe its application here to claims thereafter arising was reasonable.

Rule 1206 relates to the filing of claims. It thus relates to a matter of "procedure"; it does not attempt to change a teacher's salary, or other such "substantive" matter, in the mid-term of a contract. As to substantive matter there may be room for disagreement. (See *Abraham* v. *Sims* (1935) 2 Cal.2d 698, 711 [34 P.2d 790, 42 P.2d 1029] and the dissent therein.) In *Abraham,* the Supreme Court, while indicating that the salary of a permanent (tenured) teacher could not be changed "after the beginning of any particular school year," went on to state (p. 711): "No more can it be doubted that despite the permanency of a teacher's tenure the board is fully empowered to change his assignment, and from time to time to prescribe his duties, so long as such power is reasonably exercised . . . ." Respondents, citing this language, concede that substantive matters "such as salary, health benefits, vacation and sabbatical leave" should not be changed during the school year, but state it is essential that a school board have power to make immediate changes in "matters of procedure, administration, teacher's duties, and things of this nature." Whether such category is definitive we do not decide, but we do conclude that the contract terms permit respondents to assert that rule 1206 was immediately effective, at least as applied to claims arising after its adoption, as here.

Petitioners further contend that respondents, despite the trial court's contrary findings and conclusions, were estopped to rely upon rule 1206. Petitioners argue there was no finding they were informed of the contents of the rule.

---

[4]Government Code section 935 reads in part: "(a) Claims against a local public entity for money or damages which are excepted by Section 905 from Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of this part, and which are not governed by any other statutes or regulations expressly relating thereto, shall be governed by the procedure prescribed in any charter, ordinance or regulation adopted by the local public entity."

In *Transport Clearings-Bay Area* v. *Simmonds* (1964) 226 Cal.App.2d 405, 427-428 [38 Cal.Rptr. 116] the court, quoting from earlier decisions, listed four essentials needed to prove estoppel and further observed that: "The burden is on the party asserting an estoppel to establish all of the elements constituting it. [Citation.] The doctrine of estoppel must be applied strictly and established in every particular."

First to be noted is the fact that, although petitioners filed various objections to respondents' proposed findings, also suggesting additional ones, they made no objections or suggestions along the line now complained of, for which reason we may infer, if supported by evidence, that the trial court found in respondents' favor on the point. (Code Civ. Proc., § 634.)

In its finding No. 5, the trial court found in part that: "No conduct on the part of the School District caused it to have an affirmative duty to specially inform the Petitioners . . . of the passage of Board Rule 1206." *McGranahan* v. *Rio Vista etc. Sch. Dist.* (1964) 224 Cal.App.2d 624, 630 [36 Cal.Rptr. 798] stated: "In the absence of a duty to speak [citation], silence alone will not create an estoppel [citation]." And in 73 Corpus Juris Secundum 428-429, Public Administrative Bodies and Procedure, section 107, a general rule is stated to be: "A valid rule or regulation duly promulgated by a public administrative agency is binding on . . . all those to whom its terms apply, regardless of actual knowledge of what is contained therein, or of hardship resulting from innocent ignorance." Federal cases and others from Massachusetts, Minnesota and South Carolina are cited. One such cited case is *Federal Crop Ins. Corp.* v. *Merrill* (1947) 332 U.S. 380 [92 L.Ed. 10, 68 S.Ct. 1, 175 A.L.R. 1075], wherein it was held that a printed regulation was binding upon an applicant, even though he was ignorant of it. In our case, the court found that the "Master Guide," containing all current rules of the board, was available to the public. Although petitioners were unaware of "procedural" rule 1206 (*Ranger* v. *F.C.C.* (1961) 294 F.2d 240 [111 App.D.C. 44]) contained in the Master Guide, their ignorance is not, in law, an excuse. We believe the court's findings and conclusions are complete, at least by inference, and that the findings and inferential findings are supported by evidence. Accordingly, we must reject petitioners' contentions.

The judgment is affirmed.

Jefferson, Acting P. J., and Kingsley, J., concurred.