[Civ. No. 67996. Second Dist., Div. Two. Oct. 13, 1983.]

RAY E. LOEHR, Plaintiff and Appellant, v.
VENTURA COUNTY COMMUNITY COLLEGE DISTRICT et al.,
Defendants and Respondents.

**COUNSEL**

Parker & Covert, Clayton H. Parker, Spencer E. Covert, Jr., and Margaret A. Chidester for Plaintiff and Appellant.

Musick, Peeler & Garrett, Stuart W. Rudnick, Thomas E. Hill, Liebert, Cassidy & Frierson, Larry J. Frierson, Melanie M. Poturica, Drescher, McConica & Young, Philip C. Drescher and John R. McConica II for Defendants and Respondents.

**OPINION**

**COMPTON, Acting P. J.**—Some two years after being discharged by the Board of Trustees of the Ventura County Community College District from his position as superintendent and chief executive officer of the district, plaintiff Ray E. Loehr instituted this action seeking both damages for his alleged wrongful termination and reinstatement. Defendants[1] demurred generally to the complaint alleging that it was barred by various statutes of limitation and, more particularly, by plaintiff's failure to comply with the filing provisions of the California Tort Claims Act (Gov. Code, § 900 et seq.). The trial court sustained the demurrers without leave to amend and entered judgment of dismissal. (Code Civ. Proc., § 581, subd. 3.) This appeal follows.

The applicable rules of appellate review need little discussion.

 We treat the demurrer as admitting all material facts properly pleaded but not contentions, deductions or conclusions of fact or law. The allegations of the complaint and attached exhibits therefore must be accepted as true. (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [487 P.2d 1241, 41 A.L.R.3d 1187]; *Collier* v. *City of Pasadena* (1983) 142 Cal.App.3d 917, 920, fn. 1 [191 Cal.Rptr. 681]; *Baldwin* v. *Zoradi* (1981) 123 Cal.App.3d 275, 279 [176 Cal.Rptr. 809].) Unless clear error or abuse of discretion is demonstrated, however, the trial court's judgment of dismissal following the sustaining of a demurrer will be affirmed on appeal. (*Owens* v. *Foundation for Ocean Research* (1980) 107 Cal.App.3d 179, 182 [165 Cal.Rptr.

---

[1]Named as defendants in the action were the Ventura County Community College District (District), its board of trustees (Board), three individual trustees (David Bender, Jr., James T. Ely, and Robert F. Stone), and two district employees (W. Ray Hearon and John Tallman).

571]; see generally *Longshore* v. *County of Ventura* (1979) 25 Cal.3d 14, 21 [157 Cal.Rptr. 706, 598 P.2d 866].)

Having thoroughly reviewed the record and the pertinent law, we are convinced that the trial court correctly sustained the demurrer and dismissed the action. The judgment must therefore be affirmed.

The complaint, filed in April 1982, asserted six causes of action, each arising out of the board of trustee's alleged wrongful termination of plaintiff's employment contract almost three years before its expiration. The pleading thus included claims for breach of contract, tortious breach of an implied covenant of good faith and fair dealing, conspiracy and failure to prevent conspiracy to wrongfully interfere with a business relationship and to induce breach of contract, writ of mandate and injunctive relief regarding common law principles of fair procedure and substantive due process, writ of mandate and injunctive relief regarding violation of Education Code section 87031, and defamation.

In substance the complaint alleged that on May 5, 1980, the Board, by vote of three to two, discharged plaintiff for purported malfeasance and misfeasance in office. One week later, May 12, 1980, plaintiff requested in writing that the Board reconsider its action and reinstate him to his former position.

The request was subsequently rejected and, on June 3, 1980, plaintiff filed a complaint in the United States District Court against the District, the Board, and three individual trustees for damages and injunctive relief under the federal Civil Rights Act (42 U.S.C. § 1983). A preliminary injunction reinstating plaintiff as superintendent was granted the following month. In November 1980, however, the United States Court of Appeals for the Ninth Circuit stayed the operation of the injunction pending resolution of defendants' appeal of the order. Approximately one year later, in October 1981, the Ninth Circuit reversed the decision of the district court, vacated the preliminary injunction and remanded the matter for further proceedings on the merits.

On November 19, 1981, while his federal action was still pending, plaintiff, in an attempt to comply with the requirements of the Tort Claims Act, filed a claim with the District for $1 million in compensatory damages, $1.2 million in special damages, and a total of over $2.5 million in exemplary damages from the individual trustees.

Following the Board's timely rejection of his demand, plaintiff sought to amend his action in federal court to add, inter alia, pendent state claims for

writ of mandate, breach of contract, wrongful inducement of breach of contract, and defamation. Less than one week after denial of his motion to amend, plaintiff filed his combined complaint for damages and petition for extraordinary relief in state court.[2]

The trial court's ruling sustaining defendants' demurrer was based in substantial part upon the notice of claim requirements of Government Code sections 905 and 945.4. These provisions of the Tort Claims Act require, as a condition precedent to bringing suit for "money or damages" against a local public entity, the timely presentation to the defendant of a *written* claim and the rejection of that claim in whole or in part.

If the claim is for injury "to person or to personal property or growing crops," the claim must be presented within 100 days after the accrual of the cause of action; if the claim is for injury of any other sort it must be presented within one year after the accrual of the cause of action. (Gov. Code, § 911.2.) For purposes of calculating these time limits, the date on which an action accrues is the date upon which it would be deemed to have accrued under the applicable statute of limitations. (Gov. Code, § 901.) As a general rule, the date of accrual is the date the plaintiff incurred injury as a result of the defendant's alleged wrongful act or omission. (See *Los Angeles City Sch. Dist.* v. *Superior Court* (1970) 9 Cal.App.3d 459, 467 [88 Cal.Rptr. 286]; *Mosesian* v. *County of Fresno* (1972) 28 Cal.App.3d 493, 500 [104 Cal.Rptr. 655]; 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 263, p. 1116.)

On appeal from the judgment of dismissal, plaintiff first contends that most, if not all, of the causes of action alleged in the complaint were not subject to the requirements of the Tort Claims Act. Arguing in the alternative, he next asserts that even if the act did apply, the time limitations in which a claim against a governmental entity must be filed were tolled by virtue of his federal court litigation. In any event, plaintiff lastly maintains that his written request for reinstatement lodged with the District in May 1980, and his formal demand for damages in November 1981, satisfied any duty he may have had to submit a timely claim before initiating his state court action. Each of these arguments were, of course, made and expressly rejected at the trial court level.

 Turning first to plaintiff's initial contention, we think it clear that each cause of action asserted in the complaint, regardless of how entitled

---

[2]Subsequent to the filing of the within action, plaintiff's complaint under the federal Civil Rights Act was disposed of in its entirety by way of summary judgment in favor of defendants.

or denominated, falls within the purview of the Tort Claims Act and thus, required the filing of a timely claim as a prerequisite to the bringing of the instant action.

By its own terms, the filing requirements of the statute extend only to actions for "money or damages." (Gov. Code, §§ 905, 905.2.) Although this term is not defined in the act, it is comprehensive in scope and includes tort claims arising out of negligence, nuisance, breach of statutory duties, and intentional wrongs. (See Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) §§ 5.7, 5.13, and cases cited therein.) Actions for breach of contract *also* fall within the scope of claims for "money or damages." (See *Baillargeon* v. *Department of Water & Power* (1977) 69 Cal.App.3d 670 [138 Cal.Rptr. 338]; *Voth* v. *Wasco Public Util. Dist.* (1976) 56 Cal.App.3d 353 [128 Cal.Rptr. 608]; *Myers* v. *County of Orange* (1970) 6 Cal.App.3d 626 [86 Cal.Rptr. 198].)

Plaintiff's reliance on *E. H. Morrill Company* v. *State of California* (1967) 65 Cal.2d 787, 793 [56 Cal.Rptr. 479, 423 P.2d 551], and *Longshore* v. *County of Ventura, supra,* at page 22, for the proposition that actions arising out of contract are immune from the claims-presentation statutes is sorely misplaced. ■ Although Government Code section 814 provides an exemption from the *immunity* provisions of the act (see Gov. Code, §§ 815-895.6) for actions predicated on breach of contract, this exemption is totally unrelated to the filing requirements set forth in sections 900 et seq. Even a cursory review of the Legislative Committee's comment to Government Code section 814[3] makes it obvious that the Legislature never intended this statute to exempt contract actions from the claims provisions of the act. Such requirements allow the governmental entity an opportunity to settle claims before suit is brought, permit an early investigation of the facts, facilitate fiscal planning for potential liabilities, and help avoid similar liabilities in the future. (*Minsky* v. *City of Los Angeles* (1974) 11 Cal.3d 113, 123 [113 Cal.Rptr. 102, 520 P.2d 726]; *Stanley* v. *City and County of San Francisco* (1975) 48 Cal.App.3d 575, 581 [121 Cal.Rptr. 842].) The purposes served by the act clearly apply whether an underlying action sounds in tort or contract.

In their briefs both parties argue at considerable length whether the various causes of actions asserted in plaintiff's complaint sound in tort or contract. In light of our foregoing analysis, we find this discussion purely ac-

---

[3]The comment states in relevant part as follows: "The doctrine of sovereign immunity has not protected public entities in California from liability arising out of contract. This section makes clear that this statute has no effect on the contractual liabilities of public entities or public employees."

ademic. Each of the six causes of action are aimed at recovering monetary damages for acts and omissions allegedly committed by the individual defendants during the course and scope of their employment with the District. Plaintiff therefore was required to file a timely claim as a mandatory prerequisite to the filing of his complaint unless he can affirmatively establish that such filing was excused as a matter of law. (See *Tammen* v. *County of San Diego* (1967) 66 Cal.2d 468 [58 Cal.Rptr. 249, 426 P.2d 753]; *San Leandro Police Officers Assn.* v. *San Leandro* (1976) 55 Cal.App.3d 553 [127 Cal.Rptr. 856]; *C. A. Magistretti Co.* v. *Merced Irrigation Dist.* (1972) 27 Cal.App.3d 270 [103 Cal.Rptr. 555].)

 Plaintiff contends that he was not required to file a claim with the District, because a portion of his damage action sought to recover lost salary and other benefits, therefore, falling within the exceptions to filings involving claims by public employees for salaries, wages and expenses (Gov. Code, § 905, subd. (c)) and claims for benefits under retirement or pension systems (Gov. Code, § 905, subd. (f)).

The limited exceptions set forth in section 905 have, for the most part, been narrowly construed. (*Hanson* v. *Garden Grove Unified School Dist.* (1982) 129 Cal.App.3d 942, 946 [181 Cal.Rptr. 378].) Having reviewed the applicable authorities, we construe section 905, subdivision (c) as exempting from the act claims for salaries and wages which have been earned but not paid. Earned but unpaid salary or wages are vested property rights, claims for which may not be properly characterized as actions for monetary damages. (Cf. *Longshore* v. *County of Ventura, supra,* at p. 22; *Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 343 [124 Cal.Rptr. 513, 540 P.2d 609]; *Hanson* v. *Garden Grove Unified School Dist., supra,* at pp. 947-948; *Miner* v. *Superior Court* (1973) 30 Cal.App.3d 597 [106 Cal.Rptr. 416]; *Ruggiero* v. *Los Angeles City Unified Sch. Dist.* (1973) 33 Cal.App.3d 970 [109 Cal.Rptr. 417].)

Similarly, the exemption specified in section 905, subdivision (f) must be limited to benefits earned during the course of employment. (*Hanson* v. *Garden Grove Unified School Dist., supra,* at p. 948; see also *Baillargeon* v. *Department of Water & Power* (1977) 69 Cal.App.3d 670, 681 [138 Cal.Rptr. 338].)

Our review of the complaint in the instant case reveals that the relief sought by plaintiff in his first three causes of action (breach of contract, tortious breach of covenant of good faith and fair dealing, and conspiracy to induce breach) does not qualify for either the section 905, subdivision (c) or subdivision (f) exemption. Plaintiff does not seek to recover salary

or wages that he previously earned nor does he seek to recover benefits to which he is presently entitled under a public retirement or pension system. Plaintiff does seek, however, to obtain monetary damages for defendants' alleged misconduct in preventing him from rendering services through which he might have acquired a vested right to additional amounts in salary or benefits.

We also note that plaintiff's first three causes of action, ostensibly sounding in contract, seek monetary recovery for emotional and mental distress, pain and suffering, humiliation, and damage to reputation.[4] Such actions obviously fall within the terms of the Tort Claims Act.

Plaintiff also attempts to avail himself of the general rule that the claims statutes do not impose any requirements for nonpecuniary actions, such as those seeking injunctive, specific or declaratory relief. (See generally *Minsky* v. *City of Los Angeles* (1974) 11 Cal.3d 113, 121 [113 Cal.Rptr. 102, 520 P.2d 726]; Van Alstyne, *supra,* § 5.23, pp. 460-462.) Since both his fourth and fifth causes of action seek such relief, plaintiff asserts that he was not obligated to file a timely claim with the District. The rule has no application, however, where a petition for extraordinary relief is merely incidental or ancillary to a prayer for damages. (Cf. *Baiza* v. *Southgate Recreation & Park Dist.* (1976) 59 Cal.App.3d 669 [130 Cal.Rptr. 836].)

Having reviewed plaintiff's self-styled causes of action for mandamus and injunctive relief in light of the complaint as a whole, we are convinced that the primary purpose of these claims is pecuniary in nature. Although we recognize that in some situations a claimant may seek both damages and nonmonetary relief from a public entity in the same action, and thus invoke a basis of recovery which is not within the purview of the Tort Claims Act, we do not believe this to be such a case. (See *Minsky* v. *Los Angeles, supra,* 11 Cal.3d 113; *Holt* v. *Kelly* (1978) 20 Cal.3d 560, 565 [143 Cal.Rptr. 625, 574 P.2d 441].) As in other portions of the complaint, both the fourth and fifth causes of action (nominally denominated as "writ of mandate and injunctive relief regarding common law principles of fair procedure and substantive due process" and "writ of mandate and injunctive relief regarding violation of Education Code section 87031") seek recovery for loss of future earnings, emotional and mental distress, pain and suffering, humili-

---

[4]It has long been established that an employer cannot be held liable in a breach of contract action for damages to the employee's health, or for injuries to his feelings or reputation, by reason of his wrongful discharge, though it be alleged that his discharge was malicious. (*Westwater* v. *Grace Church* (1903) 140 Cal. 339, 342-343 [73 P. 1055].) To whatever extent plaintiff's complaint alleges that such damages arise from a breach of contract, it fails to state a cause of action. (*Id.*)

ation, and damage to reputation. Under the circumstances, the damages that plaintiff seeks to obtain by way of these allegations are anything but incidental or ancillary to his request for extraordinary relief.[5]

Having concluded that plaintiff was compelled to file a timely demand with the District as a prerequisite to initiating his lawsuit,[6] we must next determine whether there was satisfactory compliance with the claims statutes.

At issue here is the legal effect of plaintiff's letter, written in May 1980, requesting reinstatement to his former position, and the formal demand for damages lodged with the District in November 1981.

In order to avoid the period of limitations prescribed in Government Code section 911.2, plaintiff maintains that his May 1980 letter must be construed as a statutory claim for damages.[7] We cannot agree.

The essential elements of a claim are set forth in Government Code section 910. They include (1) the names and addresses of the claimant and the person to whom notices are to be sent, (2) a statement of the facts supporting the claim, (3) a description of the injury *and* the amount claimed as of the time of presentation, and (4) the name(s) of the public employee(s) who caused the injury, if known.

Although a claim need not conform to pleading standards, the facts constituting the causes of action pleaded in the complaint must substantially

---

[5]Nothing in *Miller* v. *Chico Unified School Dist.* (1979) 24 Cal.3d 703 [157 Cal.Rptr. 72, 597 P.2d 475], relied upon by plaintiff in support of his fifth cause of action (alleging a violation of Ed. Code, § 87031), would relieve a claimant of his obligation to comply with the filing requirements of Government Code section 945.4.

[6]As to plaintiff's sixth cause of action for libel, slander, and slander per se, there can be no dispute that such claims, plainly sounding in tort, necessitated the filing of a demand for damages with the District.

[7]We note here that plaintiff's first five causes of action accrued on May 5, 1980, the date on which his employment contract was terminated, and he allegedly was denied due process, fair procedure and certain statutory rights. With respect to the sixth cause of action for defamation against all defendants, the date of accrual was June 25, 1980, the date on which a letter written by defendant Ely setting forth the charges against plaintiff was published in several local newspapers. As to the remaining individual defendants (except for defendant Hearon), the complaint alleges that certain defamatory statements were made by them between March 27, 1980, and September 18, 1980. The last of such statements was apparently made by defendant Bender on August 27, 1981.

In accordance with Government Code section 911.2, plaintiff would have one year from May 5, 1980, in which to file a claim relating to his first five causes of action. As to the sixth cause of action, plaintiff would have 100 days from the date(s) the alleged defamatory statements were uttered in which to file a timely claim.

correspond with the circumstances described in the claims as the basis of the plaintiff's injury. (*Connelly* v. *State of California* (1970) 3 Cal.App.3d 744, 743 [84 Cal.Rptr. 257].) Where there has been an attempt to comply but the compliance is defective, the test of substantial compliance controls. Under this test, the court must ask whether sufficient information is disclosed on the face of the filed claim "to reasonably enable the public entity to make an adequate investigation of the merits of the claim and to settle it without the expense of a lawsuit." (*City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 456 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223].)

The doctrine of substantial compliance, however, cannot cure total omission of an essential element from the claim or remedy a plaintiff's failure to comply meaningfully with the statute. (*Hall* v. *City of Los Angeles* (1941) 19 Cal.2d 198 [120 P.2d 13]; *Tyus* v. *City of Los Angeles* (1977) 74 Cal.App.3d 667 [141 Cal.Rptr. 630]; *Shelton* v. *Superior Court* (1976) 56 Cal.App.3d 66 [128 Cal.Rptr. 454].)

Even a cursory reading of plaintiff's May 12th letter demonstrates that it fails to satisfy the test of substantial compliance and thus cannot be considered a claim for damages within the meaning of Government Code section 945.4.

At most, the letter was merely a demand that the Board reinstate plaintiff as superintendent of the district or face possible legal action. The only mention of damages appears as a passing reference to the availability of such relief under the federal Civil Rights Act. Nowhere in the letter is there a claim for money damages, nor, for that matter is there even an estimate of the amount of any prospective injury, damage or loss.

The document also fails to state in detail the circumstances or occurrence that would give rise to certain of the wrongs which constitute the basis of plaintiff's causes of action for conspiracy, defamation, denial of due process and violation of Education Code section 87031. Moreover, there is no reference to defendant Tallman, named in plaintiff's third and sixth causes of action, or defendant Hearon, named solely in the third cause of action. Even more significantly, the statements and publications upon which plaintiff purports to base his action for defamation are, for the most part, not alleged to have accrued before the date the letter was lodged with the Board.

Despite these material omissions, plaintiff argues that defendants' actual knowledge of the circumstances surrounding the claim made it unnecessary for him to detail the facts of his termination or allege the exact amount of

damages that resulted from the District's actions. Compliance with the filing requirements, however, may not be excused simply because the defendant public entity has full knowledge of the facts constituting the basis of the claim. (*Pacific Tel. & Tel. Co.* v. *County of Riverside* (1980) 106 Cal.App.3d 183, 191 [165 Cal.Rptr. 29].)

Based upon the foregoing, we must conclude that plaintiff's letter requesting reinstatement was insufficient as a matter of law to satisfy the requirements of a claim.

There is no dispute that the formal demand sent to the Board in November 1981, constituted a legally sufficient claim under the statutes. However, since it was filed more than 18 months after plaintiff's termination on May 5, 1980, and more than 14 months after the date of the last wrongful act alleged in the complaint,[8] it must be construed as untimely unless the period of limitations was equitably tolled by the institution of the federal court proceedings. Under the circumstances of the instant case, we hold that the doctrine of equitable tolling has no application.

Although the prescribed statutes of limitations for commencement of actions against a public entity (Gov. Code, § 911.2) are mandatory and must be strictly complied with (see *Chase* v. *State of California* (1977) 67 Cal.App.3d 808, 812 [136 Cal.Rptr. 833]), the doctrine of equitable tolling has been applied to soften the harsh impact of such technical rules when to do so would allow a good faith litigant to have his day in court. (*Addison* v. *State of California* (1978) 21 Cal.3d 313, 316 [146 Cal.Rptr. 224, 578 P.2d 941].) The doctrine generally applies "[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one designed to lessen the extent of the injury or damages, . . ." (*Myers* v. *County of Orange* (1970) 6 Cal.App.3d 626, 634 [86 Cal.Rptr. 198]; *Elkins* v. *Derby* (1974) 12 Cal.3d 410, 414 [115 Cal.Rptr. 641, 525 P.2d 81, 71 A.L.R.3d 839].)

In *Addison* v. *State of California, supra,* 21 Cal.3d 313 Justice Richardson set forth three factors considered in determining whether equitable tolling should be applied in that case. As recently pointed out in *Collier* v. *City of Pasadena* (1983) 142 Cal.App.3d 917, 924 [191 Cal.Rptr. 681],

---

[8]Actually, the last wrongful act alleged in the complaint occurred on August 27, 1981, when defendant Bender purportedly made a defamatory statement concerning plaintiff. The November 1981 claim, however, makes no reference whatsoever to his purported utterance. Defendants' therefore were never afforded notice that defendant Bender's statement was a subject of the demand for damages.

subsequent decisions have treated Justice Richardson's words as creating a definitive three-pronged test for invocation of the doctrine.

As an initial prerequisite, the *Collier* court noted that the filing of the first claim must provide the defendant in the second claim with timely notice of the need to begin investigating the facts which form the basis of that claim. Generally this means that the defendant in the first claim is the same one being sued in the second. (*Id.*, at p. 924.) As a second prerequisite, the court pointed out that the facts of the two claims must be identical or at least so similar that defendants' investigation of the first claim will place him in a position to fairly defend the second. (*Id.*, at p. 925.) As a third and final prerequisite, the court observed that the plaintiff must have acted reasonably and in good faith in filing the second claim.

 Nothing in the cases cited by plaintiff support his argument that the claims statutes were tolled between June 1980, when he filed his federal court action, and October 1981, when the Ninth Circuit vacated the lower court's order granting a preliminary injunction.[9] Each of the causes of action asserted in the complaint at issue here is predicated upon a different wrong, and based on a set of facts independent of those set forth in plaintiff's suit under the federal Civil Rights Act. The rights that plaintiff now seek to have vindicated are, for the most part, totally unrelated to the constitutional rights which formed the basis of his federal claim for relief.

 It has long been established that the Civil Rights Act does not supply a federal remedy for the ordinary tortious acts or omissions of state and local governmental employees. To thus invoke a federal cause of action, the plaintiff must allege facts that go beyond mere tortious conduct, and rise to the dignity of a violation of a federal constitutional or statutory right. (Van Alstyne, *supra*, § 2.40, pp. 88-93.) Under the circumstances, we think it clear that the type and amount of evidence needed to defend against the instant action is significantly dissimilar to that which would have been needed to oppose the federal litigation. This is especially true in light of the fact that neither defendant Tallman nor defendant Hearon were named in the complaint filed in district court. Moreover, the state pleading contains numerous allegations of acts and omissions which occurred subsequent to the institution of the federal action.

We also must reject plaintiff's attempt to characterize the bringing of the civil rights suit as an election of remedies for which he should not be pen-

---

[9]The preliminary injunction actually was in effect from July 1980 to November 1980, when the Ninth Circuit stayed the district court's order pending completion of defendants' appeal.

alized. ██ ██ ██ ██ At this point, we can only speculate as to why plaintiff chose federal court as the forum in which to initiate his action.[10] If such choice had been a true alternative remedy, however, there would have been no need for plaintiff to attempt to amend, as he did, the federal complaint to add the various pendant state claims.

Plaintiff's reliance on *Elkins* v. *Derby, supra,* 12 Cal.3d 410, and *Addison* v. *State of California, supra,* 21 Cal.3d 313, is misplaced. Both cases generally applied the doctrine of equitable tolling to situations involving litigants who, possessing *several legal remedies* for the *same* harm, reasonably and in good faith pursued one. We agree with defendants, however, that neither case stands for the unique proposition that the statute of limitations should be tolled while a plaintiff who allegedly suffered several different wrongs pursues only *one* remedy as to *one* of those wrongs.

Plaintiff in our case failed to timely file any claim that would have alerted defendants to the nature of the various causes of action eventually asserted in the state court suit. Nothing, however, prevented him from filing such a claim or from alleging in the original federal proceeding the causes of action presently in dispute. Plaintiff also was under no obligation to pursue any administrative remedies or to litigate the merits of his claims in federal court before bringing suit in the courts of this state. (Cf. *Collier* v. *City of Pasadena, supra,* 142 Cal.App.3d 917; *Elkins* v. *Derby, supra,* 12 Cal.3d 410; *Jones* v. *Tracy School Dist.* (1980) 27 Cal.3d 99 [165 Cal.Rptr. 100, 611 P.2d 441].)

 A comparison of the federal and state court actions demonstrates that the two are substantially dissimilar as to both the remedies they seek and the wrongs they allege. (Cf. *Isthmus Landowners Ass'n.* v. *State of Cal.* (9th Cir. 1979) 601 F.2d 1087.) In light of these disparities we fail to see how the filing of the federal suit could have provided timely notice to defendants of the causes of action subsequently alleged in the state court complaint. Under the circumstances, prejudice to defendants is manifest.

Since there was no reasonable likelihood that plaintiff could have amended the complaint to state a properly pleaded cause of action, the trial court was correct in sustaining the demurrer without leave to amend. (See 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 844, p. 2449.)

---

[10]A claim under the Civil Rights Act, whether brought in federal or state court, does not require compliance with the claims statutes heretofore discussed. (See *Williams* v. *Horvath* (1976) 16 Cal.3d 834, 842 [129 Cal.Rptr. 453, 548 P.2d 1125]; *Donovan* v. *Reinbold* (9th Cir. 1970) 433 F.2d 738.)

The judgment of dismissal is affirmed.

Beach, J., and Gates, J., concurred.

A petition for a rehearing was denied November 7, 1983, and appellant's petition for a hearing by the Supreme Court was denied January 18, 1984. Bird, C. J., was of the opinion that the petition should be granted.