Filed 5/11/16  Love v. County of Los Angeles CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LEE ANDRE LOVE<br><br>Plaintiff and Appellant,<br><br>v.<br><br>COUNTY OF LOS ANGELES et al.,<br><br>Defendants and Respondents. | B264788<br><br>(Los Angeles County<br>Super. Ct. No. YC068989) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Stuart M. Rice, Judge.  Affirmed.

Lee Andre Love, in pro. per., for Plaintiff and Appellant.

Fuentes & McNally, Raymond J. Fuentes and Sofia Sarin for Defendants and Respondents.

Lee Andre Love (appellant) appeals from a judgment of dismissal entered after the trial court sustained a demurrer to 16 of appellant's 17 causes of action in his second amended complaint (SAC) without leave to amend.[1] We affirm.

## FACTUAL BACKGROUND

On October 13, 2009, at approximately 7:45 p.m., Los Angeles County Sheriff's Deputies Daniel Chavez and Mark Sumi were patrolling an area of Los Angeles known by the deputies to contain high levels of narcotics activity. The deputies observed appellant's car in the parking lot of the La Mirage Inn with its exterior lights on and engine running. They shined the patrol vehicle's spotlight into the interior of the car to determine if there were any occupants inside. They observed appellant and a female companion in the car, both of whom slid down in their seats immediately, causing the deputies to believe they were trying to avoid detection. Deputy Sumi approached the driver's side of the car, while Deputy Chavez approached the passenger side.

When appellant rolled down the window of the vehicle, the deputies detected a strong odor of marijuana from inside the car. Upon being asked if he had any narcotics in the car, appellant said that he had marijuana in the car, and that he was a medical marijuana user. Deputies Chavez and Sumi also observed two small baggies of a plant like substance resembling marijuana in plain view on the center console. Deputy Sumi ordered appellant and the passenger out of the car pending a narcotics investigation. Appellant and the passenger were both placed in the rear of the patrol vehicle.

The car contained approximately 2.8 ounces of marijuana. The marijuana was sorted into baggies of similar size and weight making for easy distribution and street-level sales. There was no evidence of any marijuana paraphernalia such as rolling papers

---

[1] After the demurrer was sustained, appellant's fifth cause of action for violation of the Fourth and Fourteenth Amendments to the United States Constitution and section 1983 of title 42 of the United States Code, was the sole remaining cause of action before the trial court. The trial court subsequently granted a motion for summary judgment as to appellant's fifth cause of action. Appellant does not appeal the summary judgment ruling, which was based on appellant's failure to file a timely or adequate separate statement of undisputed facts.

or pipes. Both Deputy Chavez and Deputy Sumi testified that appellant's car contained more marijuana than any individual would normally possess for personal use. Appellant admitted that all of the marijuana belonged to him. On December 10, 2009, appellant was arraigned on a single count of possession of marijuana for sale, in violation of Health and Safety Code section 11359 stemming from the October 13, 2009 arrest. Deputy Chavez testified at the preliminary hearing, and the court held that there was sufficient evidence to hold appellant to answer for the crime.

On November 6, 2009, California Highway Patrol Officer Martin Geller stopped appellant for a traffic violation. Appellant had two pounds of marijuana in the trunk and an ounce of marijuana in the passenger area. He also had $443 in cash. He claimed that he operated a dispensary and the marijuana in the trunk was for medical marijuana users. Appellant was arrested for transportation and sale of marijuana. At trial, Officer Geller opined that appellant possessed the marijuana unlawfully, for the purpose of sale.

The two cases against appellant stemming from the October 13, 2009 and November 6, 2009 incidents were consolidated. Counsel for appellant filed a motion to suppress evidence from the October 13, 2009 incident, arguing that the evidence should be suppressed due to the fact that it was an unlawful search and detention. The trial court denied appellant's motion.

Appellant's criminal trial commenced on April 25, 2011. During trial, Detective Robert Wagner testified as an expert regarding California's medical marijuana laws, the Compassionate Use Act (Health & Saf. Code, § 11362.5 et seq.), and the Medical Marijuana Program (MMP) (§ 11362.7 et seq.). When presented with a hypothetical question based on facts similar to the October 13, 2009 and November 6, 2009 incidents, Wagner opined that on each occasion the marijuana was possessed unlawfully for the purpose of sale.

In 2006, appellant registered a medical marijuana dispensary business called Ambrosia Holistic Caregivers with the Los Angeles City Office of Finance. He later advised that office that he never started the business. Appellant's business is not found among the 186 registered medical marijuana dispensaries in Los Angeles.

3

Armond Tollette, M.D., testified that each year from 2005 through 2009, he recommended that appellant use marijuana to treat migraine headaches. Bonni Goldstein, M.D., testified that in 2009 and 2010, she recommended that appellant use marijuana to treat migraine headaches and insomnia. Goldstein did not recommend a particular dose.

Appellant testified at trial that in 2009 he was a qualified medical marijuana patient and a member of several collectives. He used marijuana to treat headaches and insomnia. He grew marijuana for one of the collectives and for his own use. He did not profit from providing marijuana to the collective.

Appellant was acquitted of felony charges but was convicted of two lesser counts of violation of Health and Safety Code section 11357, subdivision (c), as misdemeanors, for possessing more than one ounce of marijuana. On July 21, 2011, the court sentenced appellant to three years of summary probation and 90 days in county jail.

On August 15, 2011, appellant filed an appeal of his convictions on the two counts of violating Health and Safety Code section 11357, subdivision (c). (Case No. B235156.) On October 4, 2012, this court reversed appellant's convictions because the trial court committed prejudicial error by failing to properly instruct the jury that the Compassionate Use Act defense applied to the lesser included simple marijuana possession offense. As to appellant's argument that there was insufficient evidence to support his misdemeanor marijuana convictions, the Court of Appeal disagreed: "There is substantial evidence from which the jury could rationally find that appellant possessed marijuana illegally on October 13, and November 6, 2009, in violation of [Health and Safety Code] section 11357, subdivision (c)."

## PROCEDURAL HISTORY

Appellant filed his complaint for civil rights violations against the County of Los Angeles (County), Los Angeles County Sheriff's Department (LASD), Sheriff Leroy

4

Baca, Deputy Mark Sumi and Deputy Daniel Chavez (respondents) on May 8, 2013, approximately three years and seven months after the October 13, 2009 incident.[2]

The SAC, filed on December 9, 2013, contained seventeen causes of action: (1) race discrimination, violation of title VI of the Civil Rights Act of 1964 and 28 Code of Federal Regulations, part 42.101 et seq., section 1983 of title 42 of the United States Code (42 U.S.C. section 1983) against Baca in his official capacity; (2) unreasonable search and seizure in violation of article I, section 13 of the California Constitution against all defendants; (3) intentional race discrimination in violation of title VI of the 1964 Civil Rights Act against LASD; (4) violation of the Fifth Amendment to the United States Constitution against all defendants in their official capacities except the LASD; (5) violation of the Fourth and Fourteenth Amendments to the United States Constitutions and 42 U.S.C. section 1983 against all defendants in their official capacities except LASD; (6) violation of the Commerce Clause, article IV and the Fourteenth Amendment to the United States Constitution against all defendants in their individual capacities except LASD; (7) violation of 42 U.S.C. sections 1981 and 1983 against all defendants in their individual and official capacities except LASD; (8) conspiracy to violate civil rights against all defendants except LASD; (9) violation of Government Code sections 11135 and 11139; (10) due process, violation of article I, section 7(a) of the California Constitution against all defendants except LASD; (11) takings/inverse condemnation in violation of article I, sections 13 and 19 of the California Constitution; (12) violation of the Bane Act, California Civil Code section 52.1 against all defendants; (13) intentional infliction of emotional distress, against all defendants except LASD; (14) negligent infliction of emotional distress, against all defendants except LASD; (15) false arrest and false imprisonment against all defendants except LASD; (16) conversion against all defendants except LASD; and (17) declaratory relief. Appellant sought declaratory and

---

[2]     Sheriff Leroy Baca resigned from office on January 30, 2014. Sheriff John L. Scott was hereafter appointed by the Board of Supervisors as the new Sheriff of Los Angeles County. On November 4, 2014, Jim McDonnell was elected Sheriff of Los Angeles County.

injunctive relief, compensatory and general damages, exemplary and punitive damages, and statutory damages, as well as all other relief deemed proper.

On March 14, 2014, respondents demurred to appellant's SAC. Respondents argued that appellant's state law causes of action were subject to demurrer for his failure to comply with the requirements of the California Tort Claims Act (hereafter referred to as "Government Claims Act"), as appellant failed to file a timely claim pursuant to Government Code section 911 et seq.[3] With an injury date of October 13, 2009, appellant was required to file his claim within six months or a late claim within one year. Instead, appellant filed his claim on January 4, 2013, well beyond these time requirements. Respondents pointed out that Government Code section 945.3 does not permit tolling while the criminal charges against appellant were pending.[4]

Respondents also argued that Deputies Chavez and Sumi and the County are immune from suit based on Government Code sections 821.6 and 820.2, and that former Sheriff Baca is immune under Government Code section 820.8.

---

[3] Cases have noted that the claim filing requirements of the Tort Claims Act are not limited to torts, therefore "Government Claims Act" is a more appropriate label for Government Code section 911 et seq. (*Gatto v. County of Sonoma* (2002) 98 Cal.App.4th 744, 750, fn. 3.)

[4] "No person charged by indictment, information, complaint, or other accusatory pleading charging a criminal offense may bring a civil action for money or damages against a peace officer or the public entity employing a peace officer based upon conduct of the peace officer relating to the offense for which the accused is charged, including an act or omission in investigating or reporting the offense or arresting or detaining the accused, while the charges against the accused are pending before a superior court.
"Any applicable statute of limitations for filing and prosecuting these actions shall be tolled during the period that the charges are pending before a superior court.
"[¶] . . . [¶]
"Nothing in this section shall prohibit the filing of a claim with the board of a public entity, and this section shall not extend the time within which a claim is required to be presented pursuant to Section 911.2." (Gov. Code, § 945.3.)

6

Respondents further argued that appellant failed to state a complete cause of action against any of the respondents. Respondents pointed out that in order to survive demurrer, appellant was required to state facts which support legal theories in order that respondents can determine the basis for appellant's allegations and allow a proper response. Respondents claimed appellant failed to meet this pleading requirement, and that his complaint was uncertain, indefinite and confusing.

Finally, respondents argued that appellant failed to state a claim against former Sheriff Baca under federal law, and that LASD must be dismissed as a matter of law because it is not a separately suable entity.

On April 3, 2014, appellant filed an opposition to respondents' demurrer. Appellant argued that on December 19, 2012, he was given a court order for return of property. On December 24, 2012, he went to retrieve his property, only to find it had been destroyed. Appellant thereafter filed his tort claim, on January 4, 2013. Appellant argued that these facts rendered his claim timely.

The demurrer was heard on April 14, 2014. On April 18, 2014, the court filed a notice of ruling that the demurrer to the second, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, and seventeenth causes of action was sustained for failure to comply with the Government Claims Act. In addition, the demurrer to the first, third, fourth, sixth, seventh and eighth causes of action was sustained for failure to state sufficient facts to constitute a cause of action.

The demurrer was overruled as to the fifth cause of action for violation of the appellant's Fourth and Fourteenth Amendment rights pursuant to section 42 U.S.C. section 1983.

On February 13, 2015, appellant filed a motion for reconsideration of the trial court's ruling on respondents' demurrer to appellant's SAC. Appellant again argued that the period of time for filing his claim should have been tolled while the criminal proceedings against him were pending and on appeal. Appellant further argued that given the opportunity to amend, he could state causes of action under the first, third,

7

fourth, fifth, sixth, seventh and eighth causes of action.  However, appellant failed to explain how he intended to amend these causes of action.

On April 3, 2015, the trial court denied appellant's motion for reconsideration on the ground that it was untimely and appellant failed to present any new facts, law or circumstances to warrant a change in the court's original ruling.

On April 3, 2015, the trial court also filed a notice of ruling on respondents' motion for summary judgment as to the fifth cause of action.  The court granted the motion on the ground that appellant failed to include a separate statement of undisputed facts, thus all material facts submitted by respondents were uncontroverted.

On April 30, 2015, judgment was entered in favor of respondents.

On June 8, 2015, appellant filed his notice of appeal from the judgment.

## DISCUSSION

### I.  Standard of review

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled.  The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded.  [Citations.]  The court does not, however, assume the truth of contentions, deductions or conclusions of law.  [Citation.]  The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken.  [Citations.]' [Citation.]  However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory.  [Citation.]  And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment.  [Citation.]" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967.)

### II.  The demurrer was properly sustained as to appellant's state law causes of action

Respondents' demurrer to appellant's second cause of action for violation of the California Constitution; ninth cause of action for violation of Government Code sections 11135 and 11139; tenth cause of action for violation of the California Constitution;

8

eleventh cause of action for takings/inverse condemnation in violation of the California Constitution; twelfth cause of action for violation of the Bane Civil Rights Act, Civil Code section 52.1; thirteenth cause of action for intentional infliction of emotional distress; fourteenth cause of action for negligent infliction of emotional distress; fifteenth cause of action for false arrest and false imprisonment; sixteenth cause of action for conversion; and seventeenth cause of action for declaratory relief, was sustained without leave to amend due to appellant's failure to file a timely claim under the Government Claims Act. As set forth below, appellant has failed to show that the trial court erred in sustaining the demurrer to these causes of action.

### A. Appellant's claim was not timely filed

"As part of the California Tort Claims Act, Government Code section 900 et seq. establishes certain conditions precedent to the filing of a lawsuit against a public entity. As relevant here, a plaintiff must timely file a claim for money or damages with the public entity. (§ 911.2.) The failure to do so bars the plaintiff from bringing suit against that entity. (§ 954.4.)" (*State v. Superior Court* (2004) 32 Cal.4th 1234, 1237, fn. omitted.) Failure to allege facts demonstrating or excusing compliance with this claim presentation requirement subjects a plaintiff to a general demurrer. (*Ibid.*)

Government Code section 911.2 requires that a claim relating to a cause of action for personal injury be presented no later than six months after the accrual of the cause of action. A late claim must be made within a reasonable time, not to exceed one year after the accrual of the cause of action. (§ 911.4.) The date of accrual of a cause of action to which a claim relates is the date upon which the cause of action would have been deemed to have accrued within the meaning of the statute of limitations which would be applicable thereto. (§ 901.)

Under Government Code section 911.2, appellant was required to file a claim within six months of his alleged injury. Appellant's state law causes of action accrued on October 13, 2009, the date of his arrest. (*Mohlmann v. City of Burbank* (1986) 179 Cal.App.3d 1037, 1041, fn. 1 [false arrest cause of action accrues on date of arrest]; *Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 889 [cause of action for

9

intentional infliction of emotional distress accrues on date that the plaintiff suffers severe emotional distress as a result of defendant's outrageous conduct]; *Bono v. Clark* (2002) 103 Cal.App.4th 1409, 1432-1433 [statute of limitations for conversion is triggered by the wrongful act of taking property]; *Gatto v. County of Sonoma, supra*, 98 Cal.App.4th at p. 760 [cause of action for violation of Civil Code section 52.1 accrues on the date of the event that allegedly caused a violation of the plaintiff's statutory or constitutional rights].)

Accordingly, appellant had until April 13, 2010, to file a claim relating to his alleged injury of October 13, 2009. Appellant did not file a claim until January 4, 2013, which is more than three years from the date the causes of action accrued. Because appellant failed to comply with the mandatory requirements of the Government Claims Act, his state law causes of action are barred.

### B. *The time for filing a claim was not tolled by the criminal proceedings*

Appellant argues that the statutes of limitation for filing his claims should have been tolled while appellant's criminal matter proceeded through the trial and appeal process. Appellant points to case law indicating that Government Code section 945.3 tolls applicable statutes of limitation for causes of action for money or damages against a peace officer while charges against the accused are pending. (See, e.g., *Harding v. Galceran* (9th Cir. 1989) 889 F.2d 906, 908-909 [Government Code section 945.3 tolled limitations period for claims based on the Civil Rights Act, 42 U.S.C. section 1983, while criminal charges were pending against plaintiff].)[5] Thus, appellant argues, his causes of action did not accrue until the reversal of his conviction on October 4, 2012.

---

[5]     Appellant also cites *Heck v. Humphrey* (1994) 512 U.S. 477, 486-487 (*Heck*), holding that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a [42 U.S.C. section] 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." Because *Heck* involved federal claims, the Government Claims Act did not apply, and the case is

10

While the authorities cited by appellant suggest that the statutes of limitation for certain causes of action are tolled while criminal charges are pending against a plaintiff, they do not address the time period for filing a claim under the Government Claims Act. The language of Government Code section 945.3 makes it clear that the existence of pending criminal charges does not excuse a plaintiff from timely filing a claim. (See fn. 4, *ante*.)

Appellant does not address the language in Government Code section 945.3, which undermines his argument that the demurrers to his state causes of action were sustained in error.

## C. *The order for return of property does not render the claim timely*

The order for return of property was issued to defendant on December 19, 2012, and a copy of this order was attached to his SAC. Appellant argues that when he went to recover his property on December 24, 2012, he was informed that his property had been destroyed. Thus, appellant argues, his claim was timely filed on January 4, 2013, which was less than six months after he learned that his property had been destroyed.

The order for return of property issued to appellant from the superior court requires the LASD to return to appellant currency in the amount of $443. The order reads: "YOU ARE HEREBY ORDERED to return the property of LEE LOVE to wit: [¶] A) CURRENCY IN THE AMOUNT OF $443.00." The order is dated December 18, 2012, and is signed by Judge Honeycutt.

While the court order relates only to money, it appears that appellant is arguing that his marijuana, which he states was wrongfully taken from him, was not returned to

irrelevant to the question of whether the demurrer was properly sustained as to appellant's state law causes of action.

11

him.[6] There is no court order in the record which required the LASD to return marijuana to appellant.[7]

The order for return of property did not give rise to any new state cause of action which would render appellant's claim timely filed. As set forth above, his state causes of action are for unreasonable search and seizure in violation of the California Constitution; violation of Government Code sections 11135 and 11139, which relate to discrimination; deprivation of due process and equal protection; takings/inverse condemnation in violation of the California Constitution; violation of the Bane Act; negligent and intentional infliction of emotional distress; false imprisonment; conversion; and declaratory relief.

The cause of action for conversion specifically states that appellant owned and legally possessed medical marijuana, that he did not consent to the removal of this property, and that the respondents' actions in taking such property constituted conversion. The statute of limitations for conversion is triggered by the act of wrongfully taking property, which in this case occurred on October 13, 2009. (*Bono v. Clark, supra*, 103 Cal.App.4th at pp. 1432-1433.) Because the order for return of property did not require LASD to return any marijuana, it is irrelevant to appellant's conversion claim and his related claims for the alleged wrongful taking of his marijuana.[8]

---

[6] Appellant makes no argument in the SAC that cash was wrongfully taken from him and not returned.

[7] At oral argument, appellant represented that he inquired of the trial court as to whether the subject order would allow him to retrieve his marijuana as well as his cash, and that the court stated the order should cover everything. However, appellant has not provided a citation to the record showing that such an exchange occurred, and we are unable to locate anything in the record indicating that the court believed appellant was entitled to return of his marijuana.

[8] At oral argument, appellant cited *City of Garden Grove v. Superior Court* (2007) 157 Cal.App.4th 355 (*Garden Grove*), which he had not cited in his briefs, as support for his argument that the destruction of his marijuana was a violation of his due process rights. *Garden Grove* is distinguishable, because in that case the marijuana owner

12

Contrary to appellant's arguments, there is no continuing violation. Appellant cites *Pace Industries, Inc. v. Three Phoenix Co.* (9th Cir. 1987) 813 F.2d 234, 237 for the proposition that "[a] continuing violation is one in which the plaintiff's interests are repeatedly invaded and a cause of action arises each time the plaintiff is injured. [Citations.]" *Pace* involved an antitrust action, and the plaintiff argued that each phase of the state court action constituted overt discrete acts which restarted the statute of limitations. The Ninth Circuit disagreed, finding "no justification for permitting the aggrieved party to file an action in antitrust more than four years after the conclusion of perhaps protracted litigation between the same parties over the same contract." (*Id.* at p. 238.) The case does not stand for the proposition that the order for return of property triggered a new injury under the circumstances of this case.

### D. *Appellant's demand for nonmonetary relief is incidental to his prayer for damages*

The statutory requirements of the Government Claims Act apply only to actions for "money or damages." (Gov. Code, §§ 905, 905.2, *Loehr v. Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1079 (*Loehr*).) "Although this term is not defined in the Act, it is comprehensive in scope and includes tort claims arising out of negligence, nuisance, breach of statutory duties, and intentional wrongs. [Citation.] Actions for breach of contract *also* fall within the scope of claims for 'money or damages.' [Citations.]" (*Loehr, supra*, at p. 1079.) Appellant points out that his

petitioned for, and received, an order for return of his marijuana after drug charges filed against him were dismissed for lack of evidence. (*Id.* at p. 363.) After the Garden Grove Police Department was ordered to return the marijuana, the City filed a petition for a writ directing the trial court to vacate the order. Under those circumstances, because the individual lawfully possessed the approximately one-third ounce of marijuana at issue, the appellate court found that the City was required to return the marijuana and thus denied the City's petition. Here, in contrast, appellant did not have an order for return of his marijuana. In addition, substantial evidence supported the jury's decision that appellant possessed the marijuana illegally at the time of his arrests. As the *Garden Grove* court noted, when an individual is not in lawful possession of marijuana at the time it is confiscated, destruction of the marijuana is appropriate. (*Id.* at pp. 387-388.)

13

Constitutional claims were not claims for damages but rather for declaratory or injunctive relief. While appellant has not clearly articulated any specific argument, nor cited any authority on this issue, we assume he means to suggest that these causes of action are not subject to the claim filing requirement of the Government Claims Act.

However, where certain causes of action in a complaint seek injunctive, specific or declaratory relief, but those causes of action are "incidental or ancillary" to a prayer for damages, the plaintiff is not permitted an exception to the filing requirements of the Government Claims Act. (*Loehr, supra*, 147 Cal.App.3d at pp. 1081-1082.) In *Loehr*, for example, the plaintiff asserted six causes of action against the government entity, including breach of contract, tortious breach of implied covenant of good faith and fair dealing, conspiracy and failure to prevent conspiracy to wrongfully interfere with a business relationship, as well as two causes of action for injunctive relief. (*Id.* at p. 1077.) After his complaint was dismissed for failure to comply with the Government Claims Act, the plaintiff attempted "to avail himself of the general rule that the claims statutes do not impose any requirements for nonpecuniary actions, such as those seeking injunctive, specific or declaratory relief." (*Id.* at p. 1081.) The court rejected this argument, finding that "in light of the complaint as a whole, we are convinced that the primary purpose of these claims is pecuniary in nature." (*Ibid.*)

Similarly, here, appellant's state claims for violation of the Government Code, takings, violation of the Bane Act, intentional infliction of emotional distress, negligent infliction of emotional distress, false arrest, false imprisonment, and conversion sought money or damages as contemplated by the Government Claims Act. In addition to declaratory and injunctive relief, appellant sought in his complaint compensatory and general damages, exemplary and punitive damages, as well as statutory damages, costs, expenses and attorney fees, and all other relief that the court should deem just and proper. As set forth in *Loehr*, "[u]nder the circumstances, the damages that plaintiff seeks to obtain by way of these allegations are anything but incidental or ancillary to his request for extraordinary relief." (*Loehr, supra*, 147 Cal.App.3d at pp. 1081-1082, fn. omitted.)

14

Appellant has failed to articulate any reason that his state claims were not properly dismissed for failure to comply with the Government Claims Act.

### III. The demurrer was properly sustained as to the remaining causes of action

Respondents' demurrer to appellant's first and third causes of action for violation of title VI of the federal Civil Rights Act of 1964 and 42 U.S.C. section 2000d; fourth cause of action for violation of the Fifth Amendment to the United States Constitution; sixth cause of action for violation of the commerce clause, article IV and Fourteenth Amendment to the United States Constitution; seventh cause of action for violation of 42 U.S.C. sections 1982 and 1983; and eighth cause of action for violation of 42 U.S.C. section 1986, was sustained without leave to amend for failure to state a claim. We find that appellant has failed to show that the demurrer to these causes of action was sustained in error.

The federal statutory and constitutional causes of action allege in a conclusory manner that appellant was wrongfully deprived of his rights as a citizen of the United States. Appellant generally alleges wrongful arrest and racial profiling. However, appellant was convicted of misdemeanor marijuana possession offenses. While these convictions were reversed for instructional error, it was held on appeal that substantial evidence supported the jury's conclusion that appellant possessed marijuana illegally on October 13, and November 6, 2009, in violation of Health and Safety Code section 11357, subdivision (c). This finding supports the trial court's conclusion that there was reasonable suspicion to detain the appellant and probable cause to arrest him.

The medical marijuana laws do not grant an individual immunity from arrest where the arresting officers have cause to believe that individual does not possess the substance for medical purposes. (*People v. Mower* (2002) 28 Cal.4th 457, 468-469.) In addition, the fact that the officers are of a different race from appellant does not raise an inference of discrimination. (*Keyser v. Sacramento City Unified Sch. Dist.* (9th Cir. 2001) 265 F.3d 741, 754.) Thus, appellant's conclusory allegation that he was stopped by the respondents because of his race is insufficient to sustain these causes of action. Instead, appellant was required to allege specific and nonconclusory facts showing that

15

the decision to arrest him was racially motivated. (*Ibid.*; see also *Lee v. City of Los Angeles* (9th Cir. 2001) 250 F.3d 668, 679, fn. 6.) For example, overt acts coupled with racial remarks are sufficient to state a claim under the federal civil rights statutes. (*Evans v. McKay* (9th Cir. 1989) 869 F.2d 1341, 1345 [white business owners alleged racial discrimination on the part of natives of Blackfeet Indian Reservation, alleging efforts to drive them out of business and specific comments such as "'whites have no rights on the reservation'"]; see also *Usher v. Los Angeles* (9th Cir. 1987) 828 F.2d 556, 561 [where black male alleged he was arrested without cause, handcuffed for several hours, denied toilet privileges and prosecuted under contrived charges also alleged he was called a "'nigger'" and a "'coon,'" the Ninth Circuit determined that "[b]y pleading that racial slurs were directed against him, Usher has made an allegation of racial animus sufficient to survive a motion to dismiss"].) Appellant has failed to allege either overt acts or racial remarks supporting his claim that he was arrested on account of his race.

Because the arresting officers had sufficient probable cause for the arrest, appellant was not wrongfully deprived of any right. Appellant failed to plead any viable federal causes of action against respondents, as he failed to state facts supporting liability under the legal theories which he attempted to allege.

In addition, the respondents were immune from liability as to appellant's Fourth Amendment claims. The doctrine of qualified immunity shields government officials from liability from civil damages if their conduct does not violate clearly established rights of which a reasonable public official should have been aware. (*Harlow v. Fitzgerald* (1982) 457 U.S. 800, 818.) "The relevant inquiry is whether a reasonable government official could have believed that his conduct was lawful, in light of clearly established law and the information he possessed. [Citations.]" (*Thorsted v. Kelly* (9th Cir. 1988) 858 F.2d 571, 573.) When a court determines that no right has been violated, it need not delve further into the question of qualified immunity. (*Pearson v. Callahan* (2009) 555 U.S. 223, 232.) There is no suggestion in the record that the officers in question did not have reasonable suspicion and probable cause at the time of appellant's October 13, 2009 arrest. Deputies Sumi and Chavez believed their actions were lawful,

16

therefore they are entitled to qualified immunity as to appellant's Fourth Amendment claims.

Appellant has failed to articulate any other arguments as to why the trial court's decision to sustain the demurrer to these federal causes of action was in error.

**IV.  The summary judgment is presumed correct in the absence of relevant legal argument**

One cause of action survived respondents' demurrer to the SAC:  appellant's fifth cause of action for violation of the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. section 1983.  In this cause of action, alleged against all defendants in their official and individual capacities except LASD, appellant alleged a continuing pattern and practice of intentional race discrimination in drug interdiction efforts carried out in the area of LASD patrol.

Respondents' summary judgment motion on this cause of action was granted because appellant failed to include a separate statement of undisputed facts.  All material facts submitted by the respondents were, accordingly, uncontroverted.

On appeal, appellant does not address his failure to provide a timely separate statement of undisputed facts.  "'[T]he trial court's judgment is presumed to be correct, and the appellant has the burden to prove otherwise by presenting legal authority on each point made and factual analysis, supported by appropriate citations to the material facts in the record; otherwise, the argument may be deemed forfeited.  [Citations.]'  [Citation.]" (*Salehi v. Surfside III Condominium Owners Assn.* (2011) 200 Cal.App.4th 1146, 1161-1162.)

Under the circumstances, we must presume the trial court's judgment to be correct.  By failing to present any argument or legal authority regarding his failure to provide a timely separate statement, appellant has waived all arguments that the trial court erred in granting respondents' summary judgment motion.  (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862 ["'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived'"].)

17

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ


We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
HOFFSTADT

18