[No. B071100. Second Dist., Div. Seven. July 21, 1994.]

PARAMOUNT UNIFIED SCHOOL DISTRICT, Plaintiff and Appellant,
v.
TEACHERS ASSOCIATION OF PARAMOUNT, CTA/NEA et al.,
Defendants and Respondents.

1372

1374

**COUNSEL**

Atkinson, Andelson, Loya, Ruud & Romo, James C. Romo and Tina L. Kannarr for Plaintiff and Appellant.

Schwartz, Steinsapir, Dohrmann & Sommers, Michael R. Feinberg and Kathy A. Finn for Defendants and Respondents.

**OPINION**

**LILLIE, P. J.**—Paramount Unified School District (District) appeals from a judgment confirming an arbitration award directing that District pay its former probationary teacher L. Mason Frelix (Frelix) compensatory damages in the sum of $24,685.69.[1] The primary issue on appeal is whether the trial court erred in failing to vacate an arbitration award on the ground that the arbitrator exceeded his powers within the meaning of Code of Civil Procedure section 1286.2, subdivision (d), by awarding monetary damages to Frelix.

### FACTUAL AND PROCEDURAL BACKGROUND

This is the second time this matter, arising out of District's "nonreelection" or termination of employment of Frelix, is before the Court of Appeal. On the first appeal, District successfully defended the trial court's order vacating that part of an arbitration award directing that District reinstate Frelix. In an unpublished opinion, Division Three of our District upheld that part of the trial court's order vacating the arbitration award reinstating Frelix, a probationary teacher, for an additional probationary year, on the ground that the arbitrator exceeded his powers under California law by

---

[1] Because the "order confirming arbitration award following remand" is signed by the judge, it is in legal effect an appealable judgment confirming the award. We also note that Frelix was a party to the proceedings below, although only Teachers Association of Paramount, CTA/NEA (Association) has filed a respondent's brief. Inasmuch as appellant raises no issue as to this point, both Frelix and Association having filed joint pleadings below, we deem this opinion to apply to Frelix as well as to Association.

approving reinstatement as a remedy; however, the Court of Appeal directed the trial court to remand the matter to the arbitrator to afford Frelix and Association "the opportunity to seek a different remedy, one within the arbitrator's powers." (*Paramount Unified School District* v. *Teachers Association of Paramount* (May 23, 1991) B051287 [nonpub. opn.], hereinafter *Paramount I.*) We set out the facts underlying the dispute between the parties as noted in the opinion in *Paramount I.*

Frelix was a probationary teacher, a certificated employee for District during school years 1986-1987 and 1987-1988; on March 9, 1988, pursuant to Education Code former section 44882, subdivision (b), (now section 44929.21), District notified Frelix of "nonreelection" or termination of employment at the end of that school year; Frelix and Association filed grievances against District alleging violations of the evaluation provisions of the collective bargaining agreement between District and Association; after the grievances could not be resolved, Frelix and Association requested arbitration as provided in the agreement; after hearing and argument, the arbitrator issued an opinion and award in favor of Association and Frelix; the arbitrator determined that District had violated the evaluation procedures required by the agreement; in handling Frelix's evaluation, District " 'seriously and extensively violated its obligations . . . to adhere to the conditions that were designed by the collective bargainers to assure the integrity of the evaluation process. Derogatory allegations and significant complaints have been extensively documented in this record . . . . Practically all of them remained undisclosed to [Frelix] at any time, let alone in a timely manner as required. These are not trivia. Timely disclosures would have enabled her the chance to correct her conduct proximate with its occurrence, if indeed the charges were accurate, as well as to dispel any misimpressions or misstatements of fact. It would also have afforded her the opportunity to seek and receive remedial counseling relative to her attitude and performance if such appeared advisable to her and the Association.' " (*Paramount I, supra,* B051287.)

The arbitrator's award directed District, inter alia, to reinstate Frelix in her second probationary year for the 1990-1991 academic year and to purge her personnel file of all documents other than those that were disclosed and identified to her to be placed in her file.

District filed a petition to vacate the foregoing arbitration award, and Association and Frelix filed a cross-petition to confirm the award; District did not contest the finding that it violated the collective bargaining agreement, but argued that the arbitrator exceeded his authority by reinstating

Frelix for another year of probationary service; the superior court ordered the arbitration award be vacated in regard to the reinstatement of Frelix, but confirmed it in all other respects.

On Frelix and Association's appeal from that prior judgment, the Court of Appeal in *Paramount I* noted that the "employment of public school teachers is extensively regulated by the California Education Code" (*Paramount I, supra*, B051287); school districts may employ teachers in the status of probationary employees; districts must notify the probationary employee, on or before March 15 of the second consecutive school year, of the decision to reelect or not reelect the employee for the next succeeding school year; and probationary teachers "may be nonreelected without cause. [Citation.] Because they do not have a property interest in their positions, nonreelection does not deprive them of property without due process of law and therefore they are not entitled to a hearing or statement of reasons for their dismissal under the provisions of Education Code section 44929.21, subdivision (b) (formerly § 44882, subd. (b))." (*Paramount I, supra*, B051287.)

The Court of Appeal in *Paramount I* also cited language in *Fontana Teachers Assn.* v. *Fontana Unified School Dist.* (1988) 201 Cal.App.3d 1517 [247 Cal.Rptr. 761], that " 'because the school district had the absolute right to dismiss [the] probationary teacher, pursuant to Education Code section 44882, subdivision (b) without cause, without a statement of reasons, and without any redress by way of administrative hearing or appeal (*Grimsley* v. *Board of Trustees, supra*, 189 Cal.App.3d at pp. 1447-1448), and because (as the Association concedes) an arbitrator would have had no power to reinstate her, even if her nonreelection was clearly punitive or disciplinary in nature, to submit this issue to arbitration would have been a pointless act.' "

In concluding that the arbitrator exceeded his powers in ordering reinstatement of Frelix, the court further stated: "Appellants submit that *Fontana* is not on point, pointing out that their grievances did not question whether the District had 'just cause' to terminate Frelix's employment. Instead of attacking the substance of the District's actions, i.e. the nonreelection of Frelix, appellants alleged procedural violations. It is nevertheless clear that the arbitrator cannot countermand the District's determination to nonreelect Frelix, in spite of a finding of procedural violations. Although the association in the *Fontana* case conceded that the arbitrator did not have the power of reinstatement, and the Association here makes no such concession, the remedy of 'instating' for a second probationary year both in form and substance conflicts with the District's notice of nonreelection." (*Paramount I, supra*, B051287.) The court concluded: "However, in light of the finding

of serious procedural violations on the part of the District, appellants should be provided the opportunity to seek a different remedy, one within the arbitrator's powers." (*Paramount I, supra*, B051287.)

On remand to the arbitrator, District argued that the arbitrator lacked the power to award monetary damages to Frelix because an award would be tantamount to "back pay" or "front pay," which are "merely alternatives to reinstatement," and are unavailable to Frelix because she was not unlawfully discharged; absent the contractual violations, District still had every right to nonreelect her.

After hearing on remand, the arbitrator issued a second opinion and award dated December 30, 1991. In a portion of the award summarizing the evidence on the "post-remand arbitral proceeding," the arbitrator stated that it was undisputed and admitted by the parties that Frelix unsuccessfully sought employment by the Los Angeles Unified School District for the 1988-1989 school year; she remained unemployed until February 1989; in the fall of 1988, the principal of an elementary school in the Los Angeles Unified School District informed Frelix that her former principal at Paramount had given her a negative recommendation, and based on his comments, she was not employed by the Los Angeles Unified School District at that time.

In a portion titled "Analysis and Conclusions," the arbitrator stated: "The Award will provide that Grievant be paid compensatory damages for the breach of the District's lawfully undertaken and lawfully enforceable obligation to evaluate her performance as a probationary teacher in accord with carefully drawn contractual provisions designed to safeguard the integrity of the evaluation process. [¶] . . . It would result in a cynical perversion of public policy were arbitrators or courts to enable school districts to negotiate and enter into such contractual undertakings, as the law requires them to do . . . , only then to flout their express commitments while taking refuge behind, of all things, an asserted public policy. . . . [¶] While it is statutorily derivative public policy to insulate the discretion of school boards in dealing with probationary teachers, it assuredly is *not* public policy to sanction school boards' negotiating and later breaching contractually framed, due-process procedures designed by the contracting parties to be protective of the integrity of the teacher evaluation processes. [¶] It is an ancient common law rule that a breaching party to a contract—public agencies being no exception—must, as a matter of elemental public policy, respond compensatorily to consequential damages suffered thereby lest the integrity of contracts be eroded for lack of meaningful deterrence."

The arbitrator's opinion continued: "In this case, in contravention of the plain terms of the contract between the Association and the District, Grievant was significantly harmed by the District's denial to her of two substantial contractually expressed rights. *First,* she had and was denied her right to confront and refute any charges against her that might impugn her conduct or competence as a teacher. *Second,* she had and was denied her right to the rehabilitative opportunity to remedy whatever deficiencies might properly be assessable against her and communicated to her by her principal so that she might conform to the reasonable expectations of her supervisors. It mocks logic and justice alike to conclude that the District should be able to circumvent the basic public policy undergirding the sanctity of contracts and insulate itself in the name of a narrow public policy favoring discretionary nonreelection of probationary teachers, thereby avoiding its otherwise obvious consequential liability for the calculated infliction of those harms upon Grievant. [¶] To assess damages against the District in these circumstances does not result in an award of 'back pay' nor one of 'front pay.' [¶] . . . Instead the Award here is of traditional contractual compensatory damages for the harm done to Grievant by the District's breach of its contractual obligations. Conceptualizing about 'back pay' or 'front pay' misses the point. She was harmed, and seriously so, jeopardizing her career and livelihood as a teacher, when the District completely, indeed flagrantly, ignored those contractual requirements. [¶] For that breach she is entitled to damages for the harm done to compensate her, to manifest to her prospective employers that nonreelection under these circumstances should not be held against her as an applicant for employment, and to effectively deter the District from countenancing its principals and other supervisors from further denials of these rights to other teachers. The District thereby wholly frustrated her opportunity to demonstrate her competence and wrongfully impugned her in the eyes of prospective employers. The salary she would have earned serves merely as an objective guide to what otherwise would be a subjective judgment of what might be a proper measure of the harm manifestly inflicted upon her by the District's contract breaches. It affords a convenient and realistic basis for determining a fair and reasonable compensatory award."

After setting out his calculations of the amount of damages, the arbitrator awarded Frelix, inter alia, "compensatory damages in the sum of $24,685.69."

District filed "petition to vacate arbitration opinion and award following remand," arguing that (1) "Any award of contractual compensatory, or other monetary, damages violates public policy and modifies the agreement," (2) the arbitrator's award of monetary damages is barred by the failure of Frelix

to comply with the Tort Claims Act, (3) the damage award constitutes an unlawful gift of public funds, and (4) the award constitutes an improper award of punitive damages, barred by Government Code section 818.

Frelix and Association opposed District's petition and filed a cross-petition to confirm the arbitration award. After hearing, the court denied District's petition and granted the cross-petition to confirm the arbitration award. District filed timely notice of appeal from the judgment confirming the arbitration award. In its briefs on appeal, District essentially asserts the same points it made in the trial court. Inasmuch as our treatment of the foregoing issues is governed by a well-defined standard of review, we set out such principles in some detail.

I

STANDARD OF REVIEW

■ "Our Supreme Court recently reiterated the strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution. (*Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1, 9 . . . .) Because of this important public policy, arbitration awards are subject to an extremely narrow judicial review. We cannot review the merits of the controversy, the validity of the arbitrator's reasoning, or the sufficiency of the evidence supporting an arbitrator's award. [Citations.] ■ The exclusive grounds for vacating an arbitration award are those listed in [Code of Civil Procedure] section 1286.2. . . . Of particular significance to this case is [the] assertion that the arbitrator exceeded his powers under section 1286.2, subdivision (d). Absent proof of one of the five grounds contained in section 1286.2, a court may not vacate an award for legal or factual error even if the error clearly appears on the face of the award and it causes substantial injustice. (*Moncharsh, supra,* 3 Cal.4th at pp. 27-28.) 'Every reasonable intendment must be indulged in favor of the award.' [Citation.]" (*Luster* v. *Collins* (1993) 15 Cal.App.4th 1338, 1344-1345 [19 Cal.Rptr.2d 215].)

■ "Generally, a decision exceeds the arbitrator's powers only if it is so utterly irrational that it amounts to an arbitrary remaking of the contract between the parties." (*Southern Cal. Rapid Transit Dist.* v. *United Transportation Union* (1992) 5 Cal.App.4th 416, 423 [6 Cal.Rptr.2d 804].) Arbitrators also exceed their powers in enforcing a contract provision illegal on its face or as applied. (*Ibid.*) "However, while a court may refuse to enforce an arbitrator's award on public policy grounds, such policy must be explicit, ' "well defined and dominant, and . . . be ascertained by reference to the

laws and legal precedents and not from general considerations of supposed public interests." [Citation.]'" (*Social Services Union* v. *Alameda County Training & Employment Bd.* (1989) 207 Cal.App.3d 1458, 1465 [255 Cal.Rptr. 746].)

■ "The parties to a contract may draft an arbitration provision so as to afford judicial review of questions of law. The question here is what, if any, judicial review should be afforded where they have not done so. This is a question of the contract term to be supplied by law. . . . In this case the parties expressed the intent that the arbitration award is 'binding.' Regardless of such a provision, it is commonly expected, in the absence of a contrary provision, that the arbitrators' decision will be final." (*Pacific Gas & Electric Co.* v. *Superior Court* (1993) 15 Cal.App.4th 576, 588-589 [19 Cal.Rptr.2d 295], fn. omitted.) "The policy of the law favoring arbitration is founded, in part, on the savings it will afford the public in costs of avoidable litigation. That purpose is advanced by requiring that the parties carry the burden of specifying that an unusual scope of judicial review is to be accorded an arbitration decision on a question of law. The purpose would be wholly frustrated if the legal merits of the arbitrators' decision could be visited anew in the superior court followed by yet another appeal. That would add a layer of litigation not available in the judicial forum." (*Id.* at p. 589.) "Even where, as here, the parties specify that the arbitrators should state the reasons for the award in the manner of a statement of decision, no compelling inference may be drawn that the purpose of the statement is to afford a basis for broad-ranging judicial review." (*Ibid.*)

With the foregoing principles in mind, we address appellant's contentions.

## II

### WHETHER ARBITRATOR EXCEEDED HIS POWERS

■ Appellant contends that the "arbitrator exceeded his contractual authority by awarding compensatory or other monetary damages as a remedy for a probationary teacher nonreelection," in violation of the provision of the collective bargaining agreement in article VII, paragraph B4d. In pertinent part, that provision provides that "The arbitrator shall be without power or authority to make any decision which requires the commission of an act prohibited by law, or to add to, subtract from, or modify the terms of this Agreement. However, it is agreed that the arbitrator is empowered to include in any award such financial reimbursement or other remedies as he/she judges to be proper."

Appellant argues that the award "added to the Agreement by including notices of nonreelection as a basis for a financial award," and that the award,

although characterizing the monetary award as compensatory damages "is a thinly veiled attempt to award back pay to an employee who had no right to any position or future employment." Appellant maintains that "Notices of nonreelection are not and cannot be part of a collective bargaining agreement, and therefore are outside of the grievance procedure and the Arbitrator's authority. The Arbitrator's award may only stand if it actually is compensatory damages for breach of contract. In order to award compensatory damages, an arbitrator must find that the employee suffered a monetary loss. Frelix did not and cannot show any actual damages she suffered as a result of the District's violations of the evaluation article of the contract."

As we read appellant's briefs, appellant does not argue that the language in article VII is not reasonably susceptible to the construction that the arbitrator has the authority to award compensatory damages for violations of the evaluation procedures. Inferring from the award that the arbitrator so construed this agreement, ". . . the appropriate standard of review is whether the application or construction of the contract presents such an egregious mistake that it amounts to an arbitrary remaking of the contract between the parties." (*Pacific Gas & Electric Co.* v. *Superior Court, supra,* 15 Cal.App.4th at pp. 592-593.)

Appellant fails even to make an argument under the appropriate standard of review with respect to the issue of the contractual authority for an award of damages for violations of the teacher evaluation procedures. We conclude that ". . . the arbitrator's reading and application of the contract is clearly within the range of ambiguity, i.e., within the ordinary bounds of semantic permissibility, [and] there can be no tenable claim that the contract has been arbitrarily remade." (*Pacific Gas & Electric Co.* v. *Superior Court, supra,* 15 Cal.App.4th at p. 594.) Accordingly, appellant fails to establish that the arbitrator exceeded his powers interpreting the agreement to permit him to award compensatory damages for breaches of its evaluation provisions by District.

Perhaps realizing the unassailability of the foregoing interpretation of the terms of the agreement, appellant's next argument is that the award is not really what it purports to be. According to appellant, the award, contrary to what it states, is in reality a financial award for District's action in sending out its notice of nonreelection—i.e., an award of backpay in disguise.

"The meaning of an award, as with an opinion, must be derived from the facts to which it is applied." (*Pacific Gas & Electric Co.* v. *Superior Court, supra,* 15 Cal.App.4th at p. 609, fn. 8.) Contrary to appellant's characterization of the monetary award, it was not based on the notice of nonreelection.

The award itself cites to instances of actual damage—*other than* not being reelected by District—sustained by Frelix as a result of violation of the evaluation procedures; it contains express findings that Frelix was "significantly harmed" by District's breach of the evaluation procedures of the agreement, which jeopardized "her career and livelihood as a teacher," and "wrongfully impugned her in the eyes of prospective employers." Accordingly, the arbitrator found a cause and effect relationship between the contractual violations and damages suffered by Frelix. To the extent that District now argues that "Frelix did not and cannot show any actual damages she suffered as a result of the District's violations of the evaluation article of the contract," District is simply ignoring the express and implied findings in the award or is mounting a challenge to the factual findings and the sufficiency of the evidence to support the arbitrator's award. The sufficiency of the evidence to support the award is not a matter for judicial review. (*Southern Cal. Rapid Transit Dist.* v. *United Transportation Union, supra,* 5 Cal.App.4th at p. 423.)

Adverting to language in the award in which the arbitrator stated that in computing compensatory damages he was using as an objective guide the salary and benefits that Frelix would have earned with Paramount in the 1988-1989 school year, District argues that "while [the arbitrator] is describing the award as compensatory damages, it is in reality a form of back pay or front pay." As explained above, appellant's argument is untenable and we reject District's characterization of the award. To the extent that appellant's argument is intended to be a challenge to the method or formula employed by the arbitrator to calculate Frelix's compensatory damages, we do not address this issue because it is at most an error of law, not reviewable by the courts. (*Southern Cal. Rapid Transit Dist.* v. *United Transportation Union, supra,* 5 Cal.App.4th at p. 423.) A contrary holding would permit the exception to swallow the rule of limited judicial review; a litigant could always contend the arbitrator erred and thus exceeded his powers. (*Luster* v. *Collins, supra,* 15 Cal.App.4th at p. 1347.)

For all of the foregoing reasons, we conclude that District has not established that the arbitrator exceeded his powers; he did not modify or arbitrarily remake the contract between the parties. ▮▮▮ We now address the issue of whether the arbitrator exceeded his powers by ordering an illegal act or one violating public policy.

While a court may refuse to enforce an arbitrator's award on public policy grounds, such policy must be explicit, well-defined and dominant, and " ' "be ascertained by reference to the laws and legal precedents and not from

general considerations of supposed public interests." ' " (*Social Services Union* v. *Alameda County Training & Employment Bd., supra,* 207 Cal.App.3d at p. 1465.)

Appellant contends that the award of compensatory damages is inconsistent with, and infringes upon, its statutory right to make reelection decisions, a matter within its sole discretion and not subject to arbitration. However, as set out above, the compensatory damage award is not, and does not purport to be based on the notice of nonreelection, but upon breaches of the evaluation procedures promised in the contract. As either a legal or factual matter, District fails to point to any statutory right that is encroached upon by the contract as construed and enforced in the instant arbitration award. Our record fails to show how the compensatory damage award presents any conflict with public policy.

In fact, the record demonstrates that the award is consistent with several public policies. ■ California has a strong public policy favoring collective bargaining agreements in the public employment sector (*Social Services Union* v. *Alameda County Training & Employment Bd., supra,* 207 Cal.App.3d at p. 1465), and in reviewing arbitration awards in the labor-management field, courts are more restricted in their power to vacate than in other types of arbitration. (*Id.* at p. 1464.)

■ In this case, the arbitrator was required to resolve a grievance concerning violation of the evaluation procedures set out in the contract between the parties. "Since nothing in the agreement expressly prohibited the remedy imposed, its imposition by the arbitrator was a proper 'disposition of the grievance' pursuant to [the agreement], and consistent with what was found to be the intent of the parties." (*Social Services Union* v. *Alameda County Training & Employment Bd., supra,* 207 Cal.App.3d at p. 1464.)

As noted above, District's arguments are based upon an incorrect characterization of the award and upon factual premises contrary to the findings of the arbitrator. District also confuses the issues of sufficiency of the evidence and an alleged error in legal reasoning with the issue of whether the award orders an illegal act or one in violation of public policy.

We also reject the somewhat inconsistent factual arguments made by District that the award (1) is in reality an award of tort damages for defamation, a matter outside the collective bargaining agreement, and (2) constitutes an award for punitive damages in violation of Government Code section 818. It is clear that neither the arbitrator nor any of the parties perceived an issue on remand to be whether Frelix was entitled to tort

damages for defamation or whether the arbitrator could award punitive damages. Further, it is clear from the calculations used by the arbitrator to set the amount of the monetary award that the arbitrator did not in fact award punitive damages. District's failure to raise these issues before the arbitrator, however, waives them for any future judicial review. (See *Moncharsh* v. *Heily & Blase* (1990) 3 Cal.4th 1, 31 [10 Cal.Rptr.2d 183, 832 P.2d 899].)

Moreover, to the extent that appellant attempts to recast or recharacterize the legal theory or theories underpinning the award, such attempt constitutes simply a challenge to the factual findings and/or legal conclusions of the arbitrator. "Even where, as here, the parties specify that the arbitrators should state the reasons for the award in the manner of a statement of decision, no compelling inference may be drawn that the purpose of the statement is to afford a basis for broad-ranging judicial review. . . . [¶] [R]egardless whether the submission is qualified, a mistake of law is ordinarily not subject to judicial review. Similarly, errors of fact are not reviewable." (*Pacific Gas & Electric Co.* v. *Superior Court, supra*, 15 Cal.App.4th at p. 589.) Thus, even if the arbitrator committed error in stating legal theories supporting the award—a question we do not decide—it is, at most a legal error not reviewable herein.

Accordingly, appellant has not shown that the award is so irrational that it amounts to an arbitrary remaking of the contract between the parties, or that its enforcement is inconsistent with District's statutory rights with respect to nonreelection of probationary teachers.

### III

#### WHETHER AWARD IS BARRED BY THE TORT CLAIMS ACT

Appellant contends that Frelix's or respondent's failure to comply with the claims filing requirement of the Tort Claims Act bars the arbitration award. To the extent that appellant's contention constitutes merely a challenge to the application of law by the arbitrator, the issue is nonreviewable.

Construing the contention as a challenge to the legality of the monetary award, we find no indication that this issue was raised before the arbitrator. The issue is thus waived for any judicial review. (See *Moncharsh* v. *Heily & Blase, supra*, 3 Cal.4th at pp. 30-31.) However, for the future guidance of arbitrators and courts confronted with this issue, we address it on its merits.

"The submission of a dispute to arbitration as an alternative to judicial adjudication is a matter of contract. [Citation.] If parties contract to

submit an issue of law to binding arbitration they may not as a matter of course reopen a 'final' resolution of the issue on the ground the arbitrators 'exceeded their powers.' A principal reason for selecting arbitration is that the cost of the judicial forum is not worth the additional assurance it may afford the correct result. That purpose, which the law favors, is disserved if review of questions of law decided in arbitration is freely available." (*Pacific Gas & Electric Co.* v. *Superior Court, supra,* 15 Cal.App.4th at p. 588.)

When parties voluntarily agree to submit their controversy to the arbitration process, they "remove it from the procedures applicable to trial. They thereupon [become] bound by the rules of law pertaining to arbitration." (*Severtson* v. *Williams Construction Co.* (1985) 173 Cal.App.3d 86, 91 [220 Cal.Rptr. 400].) Nonjudicial arbitration proceedings are generally regulated by the procedural rules established by the arbitration agency; such proceedings are not necessarily controlled by the Code of Civil Procedure unless expressly provided by that code (Code Civ. Proc., § 1280 et seq.), by the arbitration rules, by the parties' contract, or other provisions of law regulating such nonjudicial arbitration. (*Workman* v. *Superior Court* (1986) 176 Cal.App.3d 493, 498 [222 Cal.Rptr. 69].)

"Hearings to confirm an arbitration award are 'special proceedings' as contrasted with 'actions.' [(Code Civ. Proc., §§ 22, 23).] Special proceedings are creatures of statute and the court's jurisdiction in such proceedings is limited by statutory authority [citation]." (*Airfloor Co. of California, Inc.* v. *Regents of University of California* (1978) 84 Cal.App.3d 1004, 1007-1008 [149 Cal.Rptr. 130].)

 The purpose of the Tort Claims Act (Gov. Code, § 900 et seq.) is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation. (*Phillips* v. *Desert Hospital Dist.* (1989) 49 Cal.3d 699, 705 [263 Cal.Rptr. 119, 780 P.2d 349].) Submission of a claim to a public entity pursuant to Government Code section 900 et seq. is a condition precedent to a tort action and the failure to present the claim bars the action. (49 Cal.3d at p. 708.)

 Inasmuch as the binding arbitration conducted herein was an *alternative* to judicial adjudication, it is clear that there never was, and will never be, a judicial adjudication of the parties' dispute. The trial court's involvement was limited to the entertaining of a special proceeding to confirm or to vacate the award. (See *Byerly* v. *Sale* (1988) 204 Cal.App.3d 1312, 1315 [251 Cal.Rptr. 749].) Thus, the claims filing provisions are superfluous to

this case. Stated another way, this case did not involve any claim for money or damages within the meaning of the Tort Claims Act. Accordingly, *Loehr* v. *Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071 [195 Cal.Rptr. 576], relied upon by appellant, is simply inapposite in that *Loehr* did not involve arbitration, but a judicial adjudication.

Were the issue properly before us, we would conclude that the instant arbitration award is not barred by the Tort Claims Act.

## IV

### WHETHER THE AWARD CONSTITUTES A GIFT OF PUBLIC FUNDS

 Appellant contends that the arbitrator exceeded his authority under the agreement because the award constitutes a gift of public funds in violation of the California Constitution, article XVI, section 6. This issue was raised before the arbitrator and is thus properly preserved for our review. (*Moncharsh* v. *Heily & Blase, supra,* 3 Cal.4th at p. 31.)

As with many of appellant's other contentions, this one too is premised on the allegation that the award is based on Frelix's nonreelection, a completely lawful act and not subject to arbitration; thus, "[i]f the District pays damages to Frelix for a completely lawful act, it has made a gift of public funds" in violation of the Constitution.

As pointed out above, appellant misconstrues the award. The award is premised on violations of the evaluation procedures of the contract. However, even when the award is properly construed, there is no merit to the argument that the award constitutes a gift of public funds.

 " 'It is well settled that, in determining whether an appropriation of public funds or property is to be considered a gift, the primary question is whether the funds are to be used for a "public" or a "private" purpose. If they are for a "public purpose," they are not a gift within the meaning of section 31 of article IV. [Now § 6 of art. XVI.] [Citations omitted.] The benefit to the state from an expenditure for a "public purpose" is in the nature of consideration and funds expended are therefore not a gift even though private persons are benefited therefrom. [Citation omitted.] [¶] The determination of what constitutes a public purpose is primarily a matter for legislative discretion [citations omitted], which is not disturbed by the courts so long as it has a reasonable basis. [Citations omitted.]' " (*Kizziah* v. *Department of Transportation* (1981) 121 Cal.App.3d 11, 22 [175 Cal.Rptr. 112].)

 In the Education Employment Relations Act (Gov. Code, § 3540 et seq.), the Legislature has determined that binding arbitration is an acceptable procedure for resolving disputes involving employer-employee relations

within the public school systems in California. "A public school employer and an exclusive representative who enter into a written agreement covering matters within the scope of representation may include in the agreement procedures for final and binding arbitration of such disputes as may arise involving the interpretation, application, or violation of the agreement." (Gov. Code, § 3548.5.) "An arbitration award made pursuant to Section 3548.5 . . . shall be final and binding upon the parties and may be enforced by a court pursuant to Title 9 (commencing with Section 1280) of Part 3 of the Code of Civil Procedure." (Gov. Code, § 3548.8.)

"If an award is confirmed, judgment shall be entered in conformity therewith," and such judgment "has the same force and effect as . . . a judgment in a civil action . . . ." (Code Civ. Proc., § 1287.4) Government Code section 970.2 provides that "A local public entity shall pay any judgment in the manner provided in this article."

We infer from the foregoing statutory scheme that the Legislature has determined that payment of binding arbitration awards is consistent with the stated purpose of the Education Employment Relations Act "to promote the improvement of personnel management and employer-employee relations within the public school systems in the State of California . . . ." (Gov. Code, § 3540.) As the foregoing determination has a reasonable basis, we must conclude that the award is to be used for a public purpose. Thus, the constitutional provision on gifts of public funds is inapplicable and we find appellant's contention to be without merit.

### DISPOSITION

The judgment is affirmed. Respondent is entitled to its costs on appeal.

Johnson, J., and Woods (Fred), J., concurred.

Appellant's petition for review by the Supreme Court was denied November 3, 1994.