Filed 11/21/22 Hollander v. Tennenbaum Capital Partners CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DAVID HOLLANDER,<br><br>    Plaintiff, Cross-defendant and Appellant,<br><br>    v.<br><br>TENNENBAUM CAPITAL PARTNERS, LLC et al.,<br><br>    Defendants, Cross-complainants and Respondents. | B314018<br><br>(Los Angeles County Super. Ct. No. 20STCP02406) |

APPEAL from an order of the Superior Court of Los Angeles County, Laura A. Seigle, Judge. Affirmed.

Hill, Farrer & Burrill and Michael K. Collins for Plaintiff, Cross-defendant and Appellant.

Quinn Emanuel Urquhart & Sullivan, Harry A. Olivar, Jr. and Thomas Parker for Defendants, Cross-complainants and Respondents.

_____

**INTRODUCTION**

David Hollander appeals the superior court's ruling denying his petition to correct and affirm as corrected the award in an arbitration between Hollander, Tennenbaum Capital Partners, LLC (TCP), and Tennenbaum Special Situations MM, IX LLC, Tennenbaum IX-C SLP, LLC, Tennenbaum IX-O SLP, LLC, and Tennenbaum Special Situations IX-S GP, LLC (collectively the CIV entities).[1]  Hollander prevailed on certain of his claims in the arbitration, but not others including his request for attorney's fees.

When Hollander presented his request for attorney's fees to the arbitrator, he did not include any claim or argument that he was entitled to attorney's fees under Labor Code section 218.5 (section 218.5).  That section provides that in any action for nonpayment of wages, "the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action."  (§ 218.5, subd. (a).)  In his petition to the superior court, Hollander sought an order adding attorney's fees to the arbitration award, contending section 218.5 entitled him to such fees.  The superior court denied Hollander's request to correct and affirmed the arbitration award as is without any award of attorney's fees.

On appeal, Hollander asserts he has an "unwaivable right" to attorney's fees under section 218.5 such that he can argue for

_____

[1] Consistent with the parties' briefs, we refer to the funds as the CIV entities, reflecting that those entities are "carried interest vehicles."  TCP and the CIV entities are collectively referred to as respondents.

2

such fees for the first time in a petition to correct the arbitration award. We disagree, and conclude Hollander's failure to make such a claim in the arbitration proceeding precludes Hollander from seeking such attorney's fees through a petition to correct the award. An arbitration award may be corrected when an arbitrator exceeds her powers, but the arbitrator here did not exceed her powers by failing to rule on a claim for relief that was never presented to her in the first place. Hollander does not advance any other ground in this appeal for correcting the arbitration award, and we therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.   Hollander's Employment and the Parties' Dispute

The pertinent facts set forth in the arbitrator's final award are as follows. Hollander was employed by TCP starting in 2002, first as a director, then as general counsel. In 2011, he became a managing partner of TCP. In April 2016, he withdrew from TCP as a partner and became an employee of TCP. The terms of his employment were set forth in a transition agreement with TCP. He remained at TCP as an employee until he voluntarily separated on January 15, 2017.

TCP is an investment manager that, among other things, manages pooled investment funds including the CIV entities. The CIV entities are limited liability companies directly managed by TCP and governed by operating agreements referred to collectively as the "CIV Agreements." Each of the CIV entities manages its own investment fund from which the CIV entity receives a performance fee if the fund generates profits at or above a specific rate. The performance fee paid to a CIV entity is distributed to its equity investors based on their percentage interest, as defined in each of the CIV Agreements; the investors

3

are defined as either "Senior Members" or "Employee Members." Hollander was a Senior Member and officer of each of the CIV entities at the relevant times.

After Hollander separated from TCP in 2017, a dispute arose over whether Hollander was entitled to equity interests in the CIV entities that were forfeited by four former TCP employees. The forfeited equity interests were conveyed to TCP, and Hollander did not receive any share of them.

## B. Arbitration Proceeding

On March 27, 2018, Hollander filed an arbitration demand with JAMS naming TCP as the sole respondent.[2] Hollander asserted claims for breach of contract and breach of fiduciary duty and sought compensatory damages, specific performance,

---

[2] The CIV Agreements included the following arbitration provision:

"The parties hereto agree that in the event of any dispute, controversy or claim arising out of or relating to this Agreement, whether based on contract, tort, statue [*sic*] or other legal or equitable theory (including without limitation, any claim of fraud, misrepresentation or fraudulent inducement or any question of validity or effect of this Agreement including this clause) or the breach or termination hereof (the 'Dispute'), the parties shall negotiate in good faith to resolve such Dispute for a period of no less than thirty (30) days following the notification of one party to the other(s) that a Dispute exists. If the parties are unable to resolve a Dispute through such good-faith negotiations, then such Dispute shall be resolved in binding arbitration in accordance with the following provisions: [¶] (a) Such dispute shall be resolved by binding arbitration to be conducted before JAMS in accordance with the provisions of JAMS' Comprehensive Arbitration Rules and Procedures as in effect at the time of the arbitration. . . . ."

4

and punitive damages. About a year later, Hollander amended his arbitration demand to add the CIV entities as additional respondents in the claim for breach of contract and to include as to all respondents a claim for conversion and a specific prayer for attorneys' fees and costs. The prayer for attorney's fees and costs was based on indemnification clauses in the operative agreements governing the investment vehicles.

The arbitration hearing was held on December 3, 2019, and the matter was submitted for a final decision after the parties simultaneously submitted post-hearing briefing on February 3, 2020.

In her first interim award, issued on March 6, 2020, the arbitrator decided that Hollander was entitled to recover $742,170 on his breach of contract claims. The arbitrator found the CIV entities were required to allocate forfeited equity to Senior Members, including Hollander, under section 3.10 of the CIV Agreements. The arbitrator rejected respondents' argument that there was a mutual mistake in the drafting of the agreements. The arbitrator thus concluded that the CIV entities breached the CIV Agreements; the arbitrator, however, stated she was not "mak[ing] a determination on the conversion or breach of fiduciary duty claims, as they are superfluous in conjunction with Hollander's breach of contract claim." The $742,170 award to Hollander included $622,856 in monetary damages and $119,314 in prejudgment interest. The arbitrator denied Hollander's request for punitive damages.

Hollander subsequently submitted a request for attorney's fees and costs to the arbitrator. Hollander's request for attorney's fees was based on indemnification provisions in the

5

CIV Agreements and the TCP "Operating Agreement."[3] Hollander sought $330,511.70 in attorneys' fees and expenses plus another $305,658.57 in indemnification for tax liability Hollander claimed he would incur as a result of any fee award.

On April 14, 2020, the arbitrator issued her interim award No. 2 in which she denied Hollander's request for attorney's fees, concluding the indemnification provisions applied only to third party claims against the indemnitees, and not to first party claims such as Hollander's claims against the CIV entities and TCP. The arbitrator also stated that "[f]rom an equitable standpoint, it would be unjust to require [r]espondents to cover [Hollander's] costs here," because Hollander "created a significant amount of expenses as a result of his quest for indemnification of tax liabilities, as well as punitive damages" and the positions he took in support of those claims were "untenable."

On May 5, 2020, the arbitrator issued her final award to Hollander in the amount of $742,170. The final award incorporated interim award No. 2 by reference and confirmed that Hollander's application for attorney's fees and costs was denied.

Respondents paid the award on May 19, 2020.

## C.    Superior Court Proceedings

On July 29, 2020, Hollander filed a petition under Code of Civil Procedure section 1286.6, subdivision (b) to correct the arbitration award and confirm it as so corrected. Hollander sought to correct the arbitration award to include an award of

---

[3] The full title of this agreement is the "Sixth Amended and Restated Limited Liability Company Agreement of Tennenbaum Capital Partners LLC."

6

attorney's fees and costs in the amount of $330,510 pursuant to section 218.5 as well as the indemnification provisions in the CIV Agreements and the TCP Operating Agreement.

On August 27, 2020, respondents filed a response to the petition as well as a contingent cross-petition to vacate the arbitration award. On September 3, 2020, Hollander filed his response to respondents' contingent cross-petition.

On February 24, 2021, after the matter was fully briefed, the superior court held a hearing on Hollander's petition. Prior to the hearing, the court posted a tentative ruling denying the petition to correct the arbitration award. On the court's motion, the matter was continued to March 30, 2021. The parties subsequently supplemented the record.

At the second hearing, held on March 30, 2021, the court heard oral argument and then took the matter under submission. The court later issued a written decision denying the petition to correct the arbitration award and granting the petition to confirm the award. The court assumed, without deciding, that Hollander was not precluded from pursuing a claim for attorney's fees under section 218.5 in a petition to correct the award even though he had not presented such a claim to the arbitrator. The court reasoned that Hollander was not a prevailing party against TCP because the arbitration award for breach of contract damages was against the CIV entities only. While Hollander was a prevailing party against the CIV entities, those entities were not Hollander's employer, which the court found to be a prerequisite to a recovery under section 218.5. In addition, Hollander's claim against the CIV entities was premised on the CIV Agreements, which were not employment contracts.

7

The court also ruled that Hollander could not challenge the arbitrator's finding that he was not entitled to attorney's fees under the indemnification provisions in the CIV Agreements and TCP Operating Agreement, because the arbitrator's finding on that issue could not be reviewed for errors of fact or law.

On May 13, 2021, the court entered a judgment denying the petition to correct the arbitration award and confirming the final arbitration award issued on May 5, 2020.

On July 2, 2021, Hollander filed a timely notice of appeal.

## DISCUSSION

### A.    Legal Principles and Standard of Review

"California law favors alternative dispute resolution as a viable means of resolving legal conflicts." (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916.) "[I]t is the general rule that parties to a private arbitration impliedly agree that the arbitrator's decision will be both binding and final." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9, fn. omitted (*Moncharsh*).) "Because the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels, arbitral finality is a core component of the parties' agreement to submit to arbitration." (*Id*. at p. 10.)

"[J]udicial review of private, binding arbitration awards is generally limited to the statutory grounds for vacating ([Code Civ. Proc.,] § 1286.2) or correcting ([Code Civ. Proc.,] § 1286.6) an award." (*Moshonov v. Walsh* (2000) 22 Cal.4th 771, 775, citing *Moncharsh, supra*, 3 Cal.4th at pp. 8-28.) Hollander does not seek to vacate the arbitration award, but instead to correct it under Code of Civil Procedure section 1286.6. This section sets forth three grounds for correcting an arbitration award:

8

"(a) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;

"(b) The arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted; or

"(c) The award is imperfect in a matter of form, not affecting the merits of the controversy." (Code Civ. Proc., § 1286.6.)

Hollander relies on the second ground, arguing that the arbitrator in this case exceeded her powers. "[A]rbitrators do not 'exceed[ ] their powers' within the meaning of . . . [Code of Civil Procedure] section 1286.6, subdivision (b) merely by rendering an erroneous decision on a legal or factual issue, so long as the issue was within the scope of the controversy submitted to the arbitrators." (*Moshonov v. Walsh*, *supra*, 22 Cal.4th at p. 775, citing *Moncharsh*, *supra*, 3 Cal.4th at p. 28.)

We review a trial court's ruling on whether an arbitrator "exceeded her powers" de novo. (*Lonky v. Patel* (2020) 51 Cal.App.5th 831, 841-842; see *Richey v. AutoNation, Inc.*, *supra*, 60 Cal.4th at p. 918, fn. 1 [court reviews de novo "the question whether the arbitrator exceeded his powers and thus whether we should vacate his award on that basis"].)

The principles of waiver and forfeiture apply in the arbitration context and serve to ensure the finality of arbitration awards. " ' "[W]aiver" means the intentional relinquishment or abandonment of a known right.' [Citations.] . . . [¶] . . . [Waiver] differs from the related concept of forfeiture, which results when a party fails to preserve a claim by raising a timely objection." (*Lynch v. California Coastal Com.* (2017) 3 Cal.5th 470, 475-476.)

9

Where a party fails to present a claim to an arbitrator relating to an issue within the scope of the arbitration, the party is generally precluded from pursuing that claim in a subsequent court proceeding challenging the arbitrator's award. (*Moncharsh*, *supra*, 3 Cal.4th at p. 31; *Maaso v. Signer* (2012) 203 Cal.App.4th 362, 377-378 (*Maaso*); *Corona v. Amherst Partners* (2003) 107 Cal.App.4th 701, 706 (*Corona*).)

## B. Hollander is Precluded from Pursuing His Claim for Attorney's Fees Under Section 218.5 Because He Did Not Present this Claim to the Arbitrator

Hollander contends the arbitrator exceeded her powers by not awarding him attorney's fees under section 218.5.[4] TCP and the CIV entities point out, and Hollander concedes, that he never presented the arbitrator with a claim for attorney's fees under section 218.5. Because the issue of attorney's fees was submitted to the arbitrator for decision, Hollander is precluded from raising a new ground for an attorney's fees award (here, under § 218.5) in a court challenge to the arbitration award. (*Moncharsh*, *supra*, 3 Cal.4th at p. 31 ["[f]ailure to raise the claim before the arbitrator . . . waives the claim for any future judicial review"].)

Hollander contends that *Moncharsh* "holds only that arguments about the legality of the arbitration agreement itself must be raised before the arbitrator to be preserved for future review." We do not agree. In *Moncharsh*, the Supreme Court addressed whether a party waives certain claims by participating

---

[4] On appeal, Hollander has abandoned the contention that the arbitrator exceeded her powers by not awarding him attorney's fees under the CIV Agreements and the TCP Operating Agreement.

10

in the arbitration itself. The court held "that unless a party is claiming (i) the entire contract is illegal, or (ii) the arbitration agreement itself is illegal, he or she need not raise the illegality question prior to participating in the arbitration process, so long as the issue is raised before the arbitrator." (*Ibid.*) The court then noted that "[f]ailure to raise the claim before the arbitrator, however, waives the claim for any future judicial review." (*Ibid.*)

Nothing suggests that the court's statement that failure to raise a claim before the arbitrator precludes "future judicial review" was limited solely to claims about the legality of an arbitration agreement. In fact, the claim at issue in *Moncharsh* related to the legality of the fee-splitting provision that was at the heart of the parties' dispute, and not to the legality of the arbitration agreement. (See *Moncharsh*, *supra*, 3 Cal.4th at p. 30 ["when—as here—the alleged illegality goes to only a portion of the contract (that does not include the arbitration agreement), the entire controversy, including the issue of illegality, remains arbitrable"].) As a result, the court held, the issue was to be decided by the arbitrator and the plaintiff was not required to raise it in court prior to the arbitration "in order to preserve the issue for later judicial review." (*Ibid.*) The court then made clear that "[t]he issue would have been waived, however, had [the plaintiff] failed to raise it *before the arbitrator*." (*Ibid.*)

That is the situation here. Hollander is claiming the arbitrator's award was in excess of her powers and illegal because it did not award him fees under section 218.5. His failure to request such fees from the arbitrator in the first place waived that claim because, as *Moncharsh* states, "[a]ny other conclusion is inconsistent with the basic purpose of private arbitration,

11

which is to finally decide a dispute between the parties." (*Moncharsh, supra*, 3 Cal.4th at p. 30.)

Nor does Hollander's cramped reading of *Moncharsh* square with other cases holding that, where a party fails to present a claim in an arbitration and the claim falls within the scope of the arbitration, the party is precluded from pursuing the claim in a court action challenging the arbitration award. (*Maaso, supra*, 203 Cal.App.4th at pp. 377-378; *Corona, supra*, 107 Cal.App.4th at p. 706; see *Heimlich v. Shivji* (2019) 7 Cal.5th 350, 358 [noting that the plaintiff "was required to request costs from the arbitrator in the first instance" and that "[f]ailure to do so would have precluded relief" in court, citing *Maaso* and *Corona*]; see also *Paramount Unified School Dist. v. Teachers Assn. of Paramount* (1994) 26 Cal.App.4th 1371, 1385-1386 [holding school district waived its arguments that a monetary damage award against it was precluded on various grounds by failing to raise the arguments before the arbitrator].)

*Maaso* is instructive. In that case, the plaintiff filed a petition to confirm an arbitration award in his favor and also sought to recover, under Code of Civil Procedure section 998 and Civil Code section 3291, expert costs incurred in the arbitration and pre-judgment interest.[5] (*Maaso, supra*, 203 Cal.App.4th at p. 369.) The plaintiff had made an offer of judgment under Code of Civil Procedure section 998 prior to the arbitration, the defendant did not accept the offer, and the arbitration award

---

[5] The court noted that "[a]lthough [the plaintiff] styled his petition as one to 'confirm' the award, he essentially sought 'correction' of the award by asking the court to add costs and interest not awarded by the panel." (*Maaso, supra*, 203 Cal.App.4th at p. 378.)

exceeded the offer.[6] (*Maaso*, *supra*, at pp. 367, 369.) The plaintiff "did not request that the arbitrators rule on the issue of [Code of Civil Procedure] section 998 costs or seek to present evidence on the issue" during the arbitration, although his counsel did "advise[ ] the panel that [the plaintiff] had previously made a [Code of Civil Procedure] section 998 offer that was rejected by [the defendant], without stating the amount of the offer." (*Id*. at pp. 368-369.) The trial court granted the petition to confirm the arbitration award but denied the plaintiff's claim for expert costs and prejudgment interest. (*Id*. at p. 369.) The Court of Appeal affirmed, concluding "that [the plaintiff] was not entitled to these costs and interest because he never requested these enhancements from the arbitrators." (*Id*. at p. 377.)

Similarly, in *Corona*, the plaintiff prevailed in an arbitration and in his petition to confirm the award sought attorney's fees and costs incurred in both the arbitration and the judicial proceedings. (*Corona*, *supra*, 107 Cal.Appp.4th at p. 704.) On appeal from the trial court's ruling denying the application for attorney's fees and costs, the Court of Appeal concluded that the plaintiff could not pursue his claim for attorney's fees and costs

---

[6] Under Code of Civil Procedure section 998, subdivision (d) if a defendant does not accept an offer of judgment within the time allowed by the section, and thereafter "fails to obtain a more favorable judgment or award," the court or arbitrator has discretion to require the defendant to pay the plaintiff's post-offer expert costs. Civil Code section 3291 provides that, in personal injury cases, where a plaintiff makes an offer of judgment under Code of Civil Procedure section 998, which is not accepted, and the plaintiff then obtains a more favorable judgment, the plaintiff is entitled to interest at a rate of 10 percent from the date of the offer.

incurred in the arbitration because he had not presented this claim to the arbitrator.  (*Id*. at p. 706.)  The court held that "[u]nder [Code of Civil Procedure sections 1286.2 and 1286.6], a party's failure to request the arbitrator to determine a particular issue within the scope of the arbitration is not a basis for vacating or correcting an award."  (*Ibid*.)  As the court explained, "As a general rule, parties to a private arbitration impliedly, if not expressly, agree that the arbitrator's decision will be both binding and final and thus the arbitrator's decision 'should be the end, not the beginning, of the dispute.'  (*Moncharsh*, *supra*, 3 Cal.4th at pp. 9-10.)  Allowing a party to request that the trial court make an award that was within the scope of the arbitration but not pursued in that forum is inconsistent with the policies underlying the statutory private arbitration scheme."  (*Corona*, *supra*, 107 Cal.App.4th at p. 706.)

In this case, Hollander does not contend that the arbitrator was unable to decide a claim for attorney's fees under section 218.5, or that Hollander was in any way precluded or hampered in presenting such a claim to the arbitrator.  Indeed, Hollander presented the arbitrator with a request for attorney's fees on other grounds.  An arbitrator's decision on a request for attorney's fees cannot be challenged in a petition to correct the award, as long as the issue was within the scope of the arbitration.  (*Moshonov v. Walsh*, *supra*, 22 Cal.4th at pp. 776-779; see *Moore v. First Bank of San Luis Obispo* (2000) 22 Cal.4th 782, 787; *Maaso*, *supra*, 203 Cal.App.4th at p. 378.)  As our Supreme Court held in *Moore*, "[h]aving submitted the fees issue to arbitration, plaintiffs cannot maintain the arbitrators exceeded their powers, within the meaning of [Code of Civil Procedure] section 1286.6, subdivision (b), by deciding it, even if they decided

14

it incorrectly." (*Moore, supra*, at p. 787.) Thus, Hollander was required to present his claim under section 218.5 to the arbitrator if that was a basis on which he was seeking fees. Allowing Hollander to raise this claim for the first time in court, after the conclusion of the arbitration, would undermine the strong policy favoring finality of arbitration awards. (*Moncharsh, supra*, 3 Cal.4th at p. 30.)

C. **The Cases Hollander Relies Upon Do Not Compel a Different Result**

Hollander argues that, because the nature of his attorney's fees claim is "unwaivable," he is excused from the above line of case law and entitled to have a court consider his section 218.5 claim even though he did not present it to the arbitrator. He first contends courts have described section 218.5 as an unwaivable right. (E.g., *Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 250; *Jones v. Humanscale Corp.* (2005) 130 Cal.App.4th 401, 412 ["Because the arbitration dealt with [the] plaintiff's wage claim, it covered an unwaivable statutory issue affecting public policy"].) Hollander asserts the arbitrator exceeded her powers by issuing an award that did not include fees under section 218.5, because the award essentially waived his unwaivable statutory right to such fees. (E.g., *Richey v. AutoNation, Inc., supra*, 60 Cal.4th at p. 916 ["Arbitrators may exceed their powers by issuing an award that violates a party's unwaivable statutory rights or that contravenes an explicit legislative expression of public policy"].)

This argument confuses the minimum requirements necessary when unwaivable statutory rights are subject to arbitration instead of litigation in court (minimum requirements a plaintiff cannot be compelled to waive as part of an agreement

15

to arbitrate) with a party's own failure to make a claim in arbitration for a specific monetary recovery (which can lead to a waiver or forfeiture of such a claim for relief).[7]

In *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, our Supreme Court considered the minimum requirements necessary to permit arbitration of unwaivable statutory rights. (*Id*. at pp. 90-91.) The court found parties could agree to arbitrate these matters in the employment context if "the arbitration . . . meet[s] certain minimum requirements" deemed essential for the "employee to vindicate his or her statutory rights." (*Id*. at pp. 90, 91.) As relevant here, "the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." (*Id*. at pp. 110-111, italics omitted.)

Applying the teaching of *Armendariz* demonstrates the inapplicability of the cases on which Hollander relies to assert he did not forfeit his section 218.5 claim. Hollander does not challenge any provisions in the arbitration agreement, nor does he contend that he was required to pay any attorney's fees or inappropriate arbitral expense that he would not have had to pay had he litigated his claims in court. Nothing in the arbitration agreement here prevented the arbitrator from awarding attorney fees under section 218.5 if they were warranted under the

---

[7] Even assuming section 218.5 sets forth an unwaivable right, by its terms the section does not allow for the recovery of fees unless a "party to the action requests attorney's fees and costs upon the initiation of the action." (§ 218.5, subd. (a).) This demonstrates that the right to seek fees under this section can be lost if not asserted.

16

statute. (Compare *Carbajal v. CWPSC, Inc.*, *supra*, 245 Cal.App.4th at p. 250 [striking arbitration clause provision that each party was to bear their own attorney's fees because it conflicted with right of recovery in § 218.5].) Hollander does not contend the arbitrator exceeded her authority in addressing what he now characterizes as a wage claim—indeed, he argues that portion of the award should be confirmed. He does not contend the arbitration agreement was unconscionable. Hollander does not assert he was improperly required to pay any arbitration related costs (compare *Jones v. Humanscale Corp.*, *supra*, 130 Cal.App.4th at pp. 415-416 [correcting arbitration award to make the defendant pay all costs and fees for the arbitrator but otherwise affirming award]), and the award did not require Hollander to pay any attorney fees of the respondents (compare *D.C. v. Harvard-Westlake School* (2009) 176 Cal.App.4th 836, 864-868 [attorney's fee award to the defendant under prevailing party provision of arbitration agreement was invalid because hate crime statute at issue provided for fee award only to a prevailing plaintiff]). Hollander was ordered to bear his own attorney fees by the arbitrator, but that result would not have been any different if Hollander failed to make a claim for section 218.5 fees in court like he failed to do in the arbitration.[8]

---

[8] Hollander also relies on *DiMarco v. Chaney* (1995) 31 Cal.App.4th 1809, where the Court of Appeal held the trial court properly corrected an arbitration award to grant the defendant attorney's fees as the prevailing party in the arbitration but erred in determining the amount of attorney's fees itself instead of remanding the issue to the arbitrator. (*Id.* at p. 1811.) That case is inapposite because the defendant presented their claim for prevailing party attorney's fees to the arbitrator in the initial

17

Hollander relies on one additional case—*Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431 (*Jordan*)—to argue that *Moncharsh*'s waiver rule does not apply to his "unwaivable right" to fees under section 218.5. *Jordan* arose from a related case which held a smog impact fee imposed by the state was unconstitutional. The trial court found the case had resulted in a "common fund" of more than $363 million and awarded the plaintiffs' counsel (Attorneys) 5 percent of this fund, approximately $18 million, in fees and expenses. (*Jordan, supra,* 100 Cal.App.4th at p. 439.) The state appealed the fee award, but before the appeal was decided the Attorneys and the state entered into an agreement to arbitrate the amount of attorney's fees; in addition, the Legislature enacted a statute that created a refund account to be used to reimburse people who had paid the smog impact fee and also provided the attorney's fees dispute in *Jordan* would be resolved through binding arbitration, with the fees award being paid from the refund account. That statute was codified at Revenue and Taxation Code section 6909. (*Jordan, supra,* at p. 440.)

The arbitrators subsequently rendered an award of more than $88 million in attorney's fees based on the common fund doctrine. (*Jordan, supra,* 100 Cal.App.4th at p. 441.) The state sought reconsideration of the award before the arbitrators, contending for the first time that Revenue and Taxation Code section 6909, subdivision (b) limited the award to $18 million because otherwise the statute would be an unconstitutional gift

---

arbitration. (*Id.* at p. 1812.) Thus, the defendant did not waive their claim for attorney's fees by failing to present it to the arbitrator.

of public funds.  The arbitration panel denied the motion for reconsideration, with one member dissenting and indicating his tentative view that the award did violate Revenue and Taxation Code section 6909, subdivision (b) and was an unconstitutional gift of public funds.  (*Jordan, supra*, at pp. 441-442.)

Attorneys then petitioned to confirm the arbitration award; the state for its part petitioned for a writ of mandate to vacate the award as being in excess of the arbitrators' powers and in violation of public policy.  The trial court vacated the arbitration award and the Court of Appeal affirmed, concluding that both the statute which authorized the arbitration (Rev. & Tax. Code, § 6909, subd. (b)) and public policy limited the award to $18 million.  (*Jordan*, s*upra*, 100 Cal.App.4th at p. 445.)  In so ruling, the court rejected the Attorneys' argument that they had created a common fund in the form of the refund account, concluding that "a cap of $18 million must be read into [Revenue and Taxation Code] section 6909[, subdivision] (b) because otherwise the statute authorizes an arbitration award that is an unconstitutional gift of public funds."  (*Id*. at p. 450.)

Attorneys argued the state waived this argument by failing to make it to the arbitrators prior to the motion for reconsideration.  (*Jordan, supra*, 100 Cal.App.4th at p 452.) *Jordan* found the *Moncharsh* rule of waiver did not apply to the facts before it, because the state was acting to protect the public fisc, and " ' "neither the doctrine of estoppel nor any other equitable principle may be invoked against a governmental body where it would operate to defeat the effective operation of a policy adopted to protect the public." [Citation.]' [Citations.]" (*Jordan, supra*, at p. 453.)  *Jordan* does not aid Hollander, because none of

19

the parties to the arbitration was a governmental body acting to protect the public, and that fact was instrumental to its holding.

D.     **Hollander's Claim under Section 218.5 Does Not Involve Pure Questions of Law**

Hollander asserts that our opinion in *D.C. v. Harvard-Westlake School, supra*, 176 Cal.App.4th 836, "rejected the argument that a claim based on a nonwaivable right was forfeited if not raised in the arbitration." That misreads the opinion, in which a divided panel permitted the plaintiff-appellant to argue a theory not raised before the arbitrator because it involved a question of law based on undisputed facts. (*Id*. at p. 868, and cases/treatise cited therein.)[9] In any event, Hollander elsewhere argues that we should invoke this exception that a pure question of law may be raised for the first time on appeal. (E.g., *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 24 [appellate courts have discretion to address question of law based on undisputed facts even though issue was not raised in the trial court].)

The issue upon which Hollander seeks review—a claim for attorney's fees under section 218.5—is not a pure question of law. Section 218.5, subdivision (a) provides, in relevant part, "In any action brought for the nonpayment of wages, fringe benefits, or

_____

[9] The majority declined to address whether a waiver occurred because it lacked the entire record of the arbitration proceedings. (*D.C. v. Harvard-Westlake School, supra*, 176 Cal.App.4th at p. 867.) In dissent, now Presiding Justice Frances Rothschild was of the view that because nothing in the record showed the appellant properly preserved the issue by raising it before the arbitrator, the issue was waived. (*Id*. at p. 869 (dis. opn. of Rothschild, J.).)

health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action."  Resolution of this claim requires the determination of many factual issues or mixed issues of fact and law, including whether the forfeited equity interests in the CIV entities were "wages" within the meaning of section 200, subdivision (a).  There are also disputed factual issues regarding the reasonableness of the fees claimed, and whether some of the fees sought do not relate to what Hollander now characterizes as his wage claim and instead to claims the arbitrator found untenable.

In any event, the exception Hollander asks us to invoke is discretionary.  (E.g., *Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 767.)  We decline to consider Hollander's new claim under these circumstances.  Hollander could have presented his claim under section 218.5 to the arbitrator, but he chose to pursue attorney fees on other grounds (presumably recognizing that a significant portion of his fees was, as the arbitrator found, related to punitive damage and indemnification issues that indisputably were not wages).  He invited the very error of which he now complains by not seeking fees under section 218.5 before the arbitrator.  As explained above, his claim presents messy questions of fact.  It would require review of the grounds for the arbitrator's ruling that Hollander caused unnecessary attorney's fees to be incurred pursuing untenable claims, which is not a proper basis on which to seek correction of an arbitration award.  Finally, allowing Hollander to raise a section 218.5 claim now, in the context of a petition to correct the arbitration award, would frustrate finality of the award, which

21

"is a core component of the parties' agreement to submit to arbitration." (*Moncharsh*, *supra*, 3 Cal.4th at p. 10.)

## DISPOSITION

We affirm the trial court's order. Respondents are awarded their costs on appeal.

NOT TO BE PUBLISHED


WEINGART, J.*


We concur:


CHANEY, J.


BENDIX, Acting P. J.

---

\* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.